_In re_ MARRIAGE OF ELINOR BEIDLER SIKLOSSY, Petitioner-Appellee, and LAURENT SIKLOSSY, Respondent-Appellant.

First District (1st Division)   No. 80-1082

Opinion filed July 28, 1980.

Richard Gigante, P. C., of Chicago (Paul R. Jenen, of counsel), for appellant.

Douglas A. Poe, Robert L. Stern, and Owen L. Doss, all of Chicago (Mayer, Brown & Platt, and Bentley, DuCanto & Doss, Ltd., of counsel), for appellee.

James T. Friedman, Ltd., of Chicago, guardian ad litem.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Respondent appeals from an order of the circuit court of Cook County granting petitioner's petition to remove the parties' four minor children from the State of Illinois to Florida. On appeal, respondent contends that the trial court's decision was contrary to the manifest weight of the evidence.

Petitioner, Elinor Siklossy, and respondent, Laurent Siklossy, were married on June 12, 1965, in Lake Forest, Illinois, and had four children: Leif, born June 29, 1968; Leon, born February 5, 1970; Lyrna, born September 7, 1972; and Laurenne, born August 31, 1976. Petitioner filed a petition for dissolution of marriage on August 28, 1978. An order was entered on December 3, 1979, dismissing the petition for dissolution of marriage after a trial on the issue of grounds. On December 31, 1979, petitioner filed a petition for the custody of the four minor children and petitioner was awarded permanent custody pursuant to a stipulated order entered January 21, 1980. On December 31, 1979, petitioner also filed a petition to remove the four minor children from the State of Illinois to Florida. On January 23, 1980, the trial court entered an order, without hearing evidence, denying the relief sought in the petition.

On February 5, 1980, petitioner filed a motion for rehearing and a second petition to remove the four minor children from Illinois. On March 7, 1980, trial was had on the second petition.

Thomas Dorris testified that he was an attorney and investment manager for the Congaree Limited Partnership. He stated that petitioner had a vested contingent interest in the partnership and that her interest would vest upon the death of her 82-year-old father. Petitioner's father, brother, sister and two cousins all had an interest in the partnership. On February 22, 1980, the partnership had received $30,558,000 from the Federal Government as compensation for the condemnation of a tract of timberland which it had owned in South Carolina. Dorris testified that the partnership would realize a capital gain unless the funds were reinvested, and that petitioner had been hired by the partnership at a salary of about $20,000 per year to locate possible investment opportunities in the southeast, particularly in Florida. The partnership wanted petitioner to move to Florida as soon as possible. With respect to petitioner's qualifications to work for the partnership, Dorris stated that petitioner had an excellent education, is a very intelligent, mature person and has an

obvious personal interest in the reinvestment of the condemnation proceeds. While Dorris testified that he did not know whether petitioner had a specific background in real estate, he stated that petitioner has had an ongoing interest in the affairs of the partnership for the 2½ years he has been associated with it. He stated that prior to the receipt of the condemnation award, petitioner had regularly attended meetings with the general partners, partnership staff and other members of the family during which the potential reinvestment of the funds was discussed.

Alfred Tisdahl, an attorney and petitioner's brother-in-law, testified that petitioner had been hired by the partnership to act as a consultant for the partnership in the reinvestment of the condemnation proceeds. He further testified that petitioner had been asked to move to the southeast because that is where most of the partnership's properties are located and where reinvestment of part of the condemnation proceeds was contemplated.

Petitioner testified that she currently lived with her children in her mother's home in Evanston, Illinois, and that her mother wanted to sell the house as soon as possible. Petitioner stated that the oldest child of the parties, Leif, was attending Nichols Middle School in Evanston, that Leon and Lyrna were attending the Dewey School in Evanston, and Laurenne was attending Calvary Montessori School. Petitioner stated that Leon had a speech handicap, which required speech therapy, and that Leon had been seeing a speech therapist at the Dewey School.

Petitioner testified that she wanted to move with the children to her father's home in Palm Beach, Florida. She described the home as having six bedrooms, three bathrooms, a living room, dining room, a kitchen and a sunroom. The children would be attending a Florida public school which was within walking distance from petitioner's father's home. Petitioner stated that the school was small but of good quality and that there was a speech therapist at the school.

Petitioner testified that she was employed by the partnership, a family-owned business, and that she would receive a salary of about $20,000 per year. She further testified that she had been trained as a teacher, but had been unable to secure a part-time teaching position. She stated that her employment with the partnership would not take her away from the home where she could not be with the children. Petitioner also testified that her personal income from investments was $28,700 per year.

Petitioner testified that from August of 1978 through the date of trial, respondent had visited with the children every weekend. She stated that respondent picked up the children at 6 p.m. on Friday and returned the children to petitioner between 4:30 and 5 p.m. on Sunday of each weekend. Respondent also saw his children on occasion during the week,

but this did not occur on a regular basis. Sometimes on those occasions, the children would stay overnight at respondent's residence. Petitioner stated that respondent and the children had a reasonably warm relationship. Respondent had taken Leif to Japan for a one-week trip in the summer of 1979. The children had visited with respondent for about two weeks during the 1979 Christmas holiday. Respondent had taken the children to Florida in December of 1978 and had taken the three older children on a 9 or 10 day camping trip.

Petitioner further testified that she believed it was in the children's best interest to move to Florida. She stated that it was healthful for the children to see their father on a reasonably regular basis and that the move to Florida would disrupt the children's warm relationship with respondent. She also testified that her business interest dominated over the respondent's right to see the children on a regular basis.

Respondent testified that prior to 1978, he was a professor at the University of Texas in Austin, Texas. In the summer of 1978 he took temporary employment at Bell Laboratories in Naperville, Illinois, and rented a home in West Chicago, Illinois, where he and his family resided. In August of 1978, petitioner and the children moved to Evanston. Respondent terminated his employment with the University of Texas and accepted employment with the University of Illinois Circle Campus. Respondent and petitioner have a home in Austin, Texas, to which respondent plans to return. After respondent and petitioner separated, respondent rented an apartment 2½ blocks from petitioner's home in Evanston and continued to rent the apartment until June of 1979. Respondent currently is renting a large house in Oak Park, Illinois.

Respondent further testified that from September of 1978 through the date of trial, he saw his children each weekend and also at times during the week. Respondent stated that he and Leif were involved in a Trail Blazer's Program, a father and son program sponsored by the YMCA. The two engaged in campouts, meetings and swimming as a part of the Trail Blazer's Program. Respondent and Leon were involved in the Indian Guides Program sponsored by the YMCA. He stated that he took Leif and Leon to museums, restaurants, shopping and other activities. Respondent and Lyrna were involved in the Indian Princesses, a father and daughter program sponsored by the YMCA.

Respondent testified that petitioner had been cooperative in the past with regard to his visitation with the children. Respondent stated that he had agreed that petitioner could have custody of the children and that petitioner said she would remain in Illinois and respondent could continue to see them on a regular basis. He further testified that he had received a telephone call from petitioner on November 20, 1979, during which

petitioner stated that if respondent did not permit her to obtain a divorce in Illinois, she would move to Florida with the children and obtain a divorce in Florida.

Respondent stated that he would only be able to see his children during the Christmas vacation and summer vacation if they were allowed to move to Florida. If the court allowed petitioner to remove the children to Florida, respondent stated that he would want visitation with the children on their Christmas break, during the entire summer and during Easter break.

On March 12, 1980, the trial court granted the petition to remove the children from Illinois to Florida. Pursuant to the order, the parties were to work out a visitation schedule and telephone communication arrangement within 30 days. On May 28, 1980, the circuit court concluded that respondent should have visitation rights with the children for six weeks during the summer and during alternate Christmas and Easter vacation periods. The court further ordered that respondent should have the opportunity to visit the children in Florida upon 48-hours notice to petitioner. This appeal followed.

Illinois law permits the custodial parent to move the children to another State where it is in the best interest of the children. (*Gallagher v. Gallagher* (1978), 60 Ill. App. 3d 26, 376 N.E.2d 279; *Gray v. Gray* (1978), 57 Ill. App. 3d 1, 372 N.E.2d 909; *Garland v. Garland* (1974), 19 Ill. App. 3d 951, 312 N.E.2d 811; Ill. Rev. Stat. 1979, ch. 40, par. 609.) This court has held that where there is no showing that an award of custody is against the children's best interest, a court should not oppose the removal of the children from Illinois unless there is a specific showing that the move would be against the children's best interest. (*Gallagher v. Gallagher*; *Gray v. Gray*; *Tandy v. Tandy* (1976), 42 Ill. App. 3d 87, 355 N.E.2d 585; *cf. Quirin v. Quirin* (1977), 50 Ill. App. 3d 785, 365 N.E.2d 226.) The trial court's determination as to what serves the best interest of the children will not be disturbed on appeal unless it is against the manifest weight of the evidence. (*Gray v. Gray*; *Hickey v. Hickey* (1975), 31 Ill. App. 3d 257, 333 N.E.2d 271; *Rosenberger v. Rosenberger* (1974), 21 Ill. App. 3d 550, 316 N.E.2d 1.) Here, the parties agreed that petitioner should have custody of their four minor children. Thus, unless it would be against the children's best interest to remove them to Florida, the judgment of the trial court must be affirmed.

The evidence presented below showed that petitioner had made excellent arrangements concerning housing and schooling in Florida. The school which Leon would attend employed a speech therapist. Respondent himself testified that petitioner is a competent mother and he agreed petitioner could have custody of the children. Petitioner secured a position of employment which required her to reside in Florida, and she is

entitled to take advantage of that economic opportunity. (*Gray v. Gray*; *Spencer v. Spencer* (1971), 132 Ill. App. 2d 740, 270 N.E.2d 72.) Although the children's removal to Florida will affect respondent's ability to visit the children, visitation difficulties of the noncustodial parent are not alone sufficient to deny a petition for removal. (*Gray v. Gray*; *Tandy v. Tandy*.) We find that there was no specific showing that the move to Florida would be against the children's best interest.

In the absence of such a showing, we conclude that the trial court's decision to allow petitioner to remove the children from Illinois to Florida was not against the manifest weight of the evidence.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.