Carol Ann AUGE, petitioner, Appellant,

v.

Frank Daniel AUGE, Respondent.

No. CX–82–1323.

Supreme Court of Minnesota.

June 3, 1983.

Klas & Klas, Mary Louise Klas, St. Paul, for appellant.

Rothstein, Wolf, Kaplan & Goff, Richard D. Goff, St. Paul, for respondent.

AMDAHL, Chief Justice.

This is an appeal of a district court order denying appellant's motions for an evidentiary hearing and for permission to remove the parties' child from the State of Minnesota. Because denial of permission to remove effected a change in custody, and the applicable statute requires an evidentiary hearing before custody may be modified, we reverse and remand for a full hearing with instructions regarding the statutory presumptions to be applied.

Appellant, the custodial parent, moved the district court for permission to allow the child, Frank Auge, Jr., to accompany her to Hawaii from November to June of each year. Appellant, her new husband and their two young children planned to live in Hawaii part of each year to oversee his business interests there. With the court's permission, Frank Jr. had spent the previous winter with them in Hawaii and had attended a school designed for children with his special educational needs. Surmising that the educationally disruptive effect of splitting each school year between Hawaii and Minnesota was not in Frank Jr.'s best interests, and that there was no "deep business necessity" for traveling to Hawaii each year, the referee recommended, and the trial court ordered, denial of permission to remove the child without affording the parties an evidentiary hearing. An appeal was taken pursuant to Rule 53.05(2), Rules of Civil Procedure, and affidavits submitted with this appeal from teachers in his local school indicated the child had made remarkable progress in his educational and emotional development while attending school in Hawaii. Despite this evidence, an evidentiary hearing and permission to remove the child were again denied.

Denial of permission to remove the child from this state effected a substantial temporary change of custody in this case, since appellant was required to leave the child in order to accompany her husband and two other children to another state. Respondent, the noncustodial parent, then moved for temporary transfer of custody to him during appellant's annual absences from the

state. The granting of the latter motion resulted in a transfer of custody to respondent for more than half of each year.[1]

Because denial of appellant's request for removal was in fact a modification of custody, the applicable rule is clear: while the trial court has continuing jurisdiction to modify a custody order if warranted, it may not do so absent an evidentiary hearing in which witnesses may be cross-examined. *Hummel v. Hummel,* 304 N.W.2d 19, 20 (Minn.1981). Further, the court's findings in custody adjudications should include a consideration of the relationships between the child and each parent, as well as the various needs and preferences of the child, where appropriate. *Peterson v. Peterson,* 308 Minn. 297, 307, 242 N.W.2d 88, 95 (1976). Finally, the family court judge, in considering the recommendations of a referee, "has the duty and ultimate responsibility for making an informed final and independent decision in all matters of reference * * *." *Id.* at 308 Minn. 306, 242 N.W.2d 94. The referee's findings in the present case are deficient because they do not reflect a consideration of aspects of the child's welfare other than the referee's assumptions about his educational needs, and the trial court erred in adopting them without making findings regarding other relevant factors. Because of these important substantive and procedural defects, the matter must be remanded for a full evidentiary hearing.

Upon remand, unless respondent can make a prima facie showing against removal, permission to remove may be granted without a full evidentiary hearing since there would be no resulting modification in custody. *Cf. Nice-Peterson v. Nice-Peterson,* 310 N.W.2d 471, 472 (Minn.1981) (upholding denial of a noncustodial parent's motion for change of custody without a hearing where movant failed to make a prima facie showing).

The trial court's decision in this case also presents a substantive family law question of first impression: whether a custodial parent in Minnesota is presumptively entitled to permission to remove the child to another state.[2] It is therefore necessary to determine the correct rule to be applied upon remand.

Minn.Stat. § 518.18(d) (1982) states that in modification proceedings, "the court shall retain the custodian established by the prior order unless: * * * (iii) The child's present environment endangers his physical or emotional health or impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child."[3] This statute most

---

1. The record is unclear, but it appears there was no evidentiary hearing during this proceeding either. Under *Hummel v. Hummel,* 304 N.W.2d 19, 20 (Minn.1981), this was a formal "modification of custody" requiring a full evidentiary proceeding, but at this stage such a hearing would have served no real purpose because the crucial decision to deny removal had already been made.

2. The parties did not brief, and we do not decide the appropriate rule for cases of removal to a foreign country, or cases involving joint custody.

3. One student commentator interpreted such provisions as a "recognition of the importance of stability in the child's post-divorce familial relationships." Note, *Residence Restrictions on Custodial Parents: Implications for the Right to Travel,* 12 Rutgers L.J. 341, 361 n. 124 (1981).

The statute is undoubtedly based in part upon the principle that interruption of the parent-child relationship may be seriously detrimental to the child's psychological development—a principle which should apply with equal or greater force when the child has already been separated from one parent at the time of a dissolution. *See generally* J. Goldstein, A. Frend & A. Solnit, *Before the Best Interests of the Child* 8–11 (1979); Mnookin, *Child Custody Adjudication: Judicial Functions in the Face of Indeterminacy,* 39 Law & Contemp.Probs. 226, 265 (Summer 1975). The Minnesota Legislature has not similarly recognized possible harmful effects on the child from relocation to another state, and one- or two-parent families not subject to orders in dissolution proceedings are free to weigh such effects without judicial interference. There is no apparent reason that a divorced custodial parent is not equally capable of autonomous decision making, subject to a limited right of objection by a third party as provided by Minn.Stat. §§ 518.18(a), 518.176, subd. 1 (1982).

frequently comes into play upon a noncustodial parent's motion that custody be transferred to him or her, rather than in the context of a motion for removal from the state. In both situations the underlying considerations are similar, however. Since denial of permission to remove would effect a change of custody in many cases, this statute should be construed as establishing an implicit presumption that removal will be permitted, subject to the noncustodial parent's ability to establish that removal is not in the best interests of the child. In modification proceedings the burden is on the party opposing the current custody arrangements. *Nice-Peterson, supra.* In the case at bar the custodial parent wishes to retain custody, but under changed circumstances. There is no apparent reason that the burden should shift to the custodial parent under these circumstances. However, in order to provide adequate notice to the noncustodial parent, the motion requesting an order granting permission to remove the child to another state must include a statement of the reasons for the request and a designation of the geographic location of the proposed residence.

■ The statutory provision dealing directly with removal delineates only one specific ground for denying permission:

> The custodial parent shall not move the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent, when the noncustodial parent has been given visitation rights by the decree. If the purpose of the move is to interfere with visitation rights given to the noncustodial parent by the decree, the court shall not permit the child's residence to be moved to another state.

Minn.Stat. § 518.175, subd. 3 (1982). This statute should not be read to exclude all other grounds for denial, since the best interests of the child may be affected by factors other than visitation. On the other hand, the limited purpose of the statute is to safeguard the visitation rights of the noncustodial parent. Removal may not be denied under this statute simply because the move may require an adjustment in the existing pattern of visitation.

Finally, the custodial parent is allowed wide discretion in determining the educational, health, and religious needs of the child:

> Except as otherwise agreed by the parties in writing at the time of the custody order, the custodian may determine the child's upbringing, including his education, health care, and religious training, unless the court *after hearing,* finds, upon motion by the noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical or emotional health is likely to be endangered or his emotional development impaired.

Minn.Stat. § 518.176, subd. 1 (1982) (emphasis added). We have not heretofore considered whether "hearing" means a full evidentiary hearing on the record, but questions of the child's health and development are unlikely to be adequately resolved by mere arguments of counsel. This provision requires that the party wishing to interfere with the custodial parent's education, health, or religious arrangements for the child carry the burden of proof, and, in order to obtain a hearing, present affidavits or other documentary evidence sufficient to support a ruling in its favor. This statutory presumption favoring the custodial parent's decisions is obviously intended to discourage parents from calling upon the courts whenever a selection of schools or other choices regarding parental responsibility must be made, and incorporates the assumption that the custodial parent is usually best equipped to make such choices.

This court has not yet considered the application of these Minnesota statutes in the context of a petition for removal.[4] Ac-

---

4. In the case of *Ryan v. Ryan,* 300 Minn. 244, 219 N.W.2d 912 (1974), this court held that removing a child to another state without court order may justify termination of alimony and support, but that termination must not be contrary to the best interests of the child. The issue of when removal may be denied was not addressed because the child had already

cording to the Supreme Court of South Dakota, "The majority of cases dealing with removal of a child from the jurisdiction support the rule that if a parent who has custody of a child has good reason for living in another state, removal will be permitted, providing such a move is consistent with the best interests of the child." *In re Ehlen,* 303 N.W.2d 808, 810 (S.D.1981).

The widely cited case of *D'Onofrio v. D'Onofrio,* 144 N.J.Super. 200, 365 A.2d 27 (1976), provides a thoughtful discussion of the considerations pertaining to removal. New Jersey has a removal statute similar to Minnesota's, except that the New Jersey statute allows removal only upon "cause shown." N.J.Stat.Ann. 9:2–2 (West 1976). This phrase has been interpreted to include not the whole range of issues going to primary custody, but rather the probability of assuring reasonable visitation to the non-custodial parent. *D'Onofrio,* 144 N.J.Super. at 205, 365 A.2d at 29. The *D'Onofrio* court also observed:

> The children, after the parents' divorce or separation, belong to a different family unit than they did when the parents lived together. The new family unit consists only of the children and the custodial parent, and what is advantageous to that unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interests of the children. It is in the context of what is best for that family unit that the precise nature and terms of visitation and changes in visitation by the noncustodial parent must be considered.

*Id.,* 144 N.J.Super. at 206, 365 A.2d at 29–30.

Though removal should not be allowed for frivolous or spiteful reasons, neither should it be disallowed solely to maintain the existing visitation patterns. As the *D'Onofrio* court reasoned:

The court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable life style for the mother and children be forfeited solely to maintain weekly visitation by the father where reasonable alternative visitation is available and where the advantages of the move are substantial. It is at least arguable, and the literature does not suggest otherwise, that the alternative of uninterrupted visits of a week or more in duration several times a year, where the father is in constant and exclusive parental contact with the children and has to plan and provide for them on a daily basis, may well serve the paternal relationship better than the typical weekly visit which involves little if any exercise of real paternal responsibility.

It is further clear that a noncustodial parent is perfectly free to remove himself from this jurisdiction despite the continued residency here of his children in order to seek opportunities for a better or different life style for himself. And if he does choose to do so, the custodial parent could hardly hope to restrain him from leaving this State on the ground that his removal will either deprive the children of their paternal relationship or depreciate its quality. The custodial parent, who bears the essential burden and responsibility for the children, is clearly entitled to the same option to seek a better life for herself and the children, particularly where the exercise of that option appears to be truly advantageous to their interests and provided that the parental interest can continue to be accommodated, even if by a different visitation arrangement than theretofore.

*Id.,* 144 N.J.Super. at 207–08, 365 A.2d at 30 (footnote omitted).

Some jurisdictions appear to have adopted the presumption, implicit in the Minnesota statutes, that permission to remove

changed residences and indicated his preference to remain there. The court noted, without approving or disapproving, that the trial court had allowed the custodial parent to retain custody despite its opinion that she took the new job in another state for personal self-fulfillment rather than any substantial improvement in her financial situation. 300 Minn. at 246–47, 219 N.W.2d at 914.

should be granted where there is no showing that the move is against the child's interests, placing the burden on the noncustodial parent. *See, e.g., In Re the Marriage of Siklossy,* 87 Ill.App.3d 124, 128, 42 Ill. Dec. 534, 537, 409 N.E.2d 29, 32 (1980); *In Re the Marriage of Lower,* 269 N.W.2d 822, 826 (Iowa 1978). Another court held that the best interests of the children are interwoven with the well-being of the custodial parent, and that difficult choices between a child and a new family unit should not be forced upon the custodial parent. *Hale v. Hale,* —— Mass.App.Ct. ——, ——, Mass. App.Adv.Sheet (1981) 2117, 429 N.E.2d 340, 343 (1981). Other courts take a more middle-of-the-road approach, establishing no presumption but allowing removal if it is in the best interests of the child. *See, e.g., Jafari v. Jafari,* 204 Neb. 622, 624, 284 N.W.2d 554, 555 (1979); *Hutchins v. Hutchins,* 84 Mich.App. 236, 238, 269 N.W.2d 539, 540 (1978).

■ The presumption favoring removal is the better approach, for several reasons. First, in most cases it would obviate *de novo* consideration of who is best suited to have custody, an issue which has already been resolved once by the courts. Unless the noncustodial parent could establish by a preponderance of the evidence that removal would not be in the child's best interests, permission to remove would be granted. Second, it would tend to maintain the child in the family unit to which he or she currently belongs, and minimize judicial interference with decisions which affect that family unit. Third, it is grounded in Minnesota's statutory scheme. Finally, it places the decision with the person best able to consider the child's needs.

Given the inadequacy of judicial determinations as to the best interests of the child, and given that one of the few guidelines we have is the fact that continuity and stability in relationships are important for the child, courts should be restricted in their authority to interfere with post-divorce family-unit decision-making. Decisions concerning the welfare of the child should be left to the custodial parent who, by virtue of his or her relationship with the child, is best-equipped to determine the child's needs. The custodial parent should be permitted to decide where he or she and the child will reside, and that decision should be second-guessed only where it would present a "clear danger to the child's well-being."

Note, *Residence Restrictions on Custodial Parents: Implications for the Right to Travel,* 12 Rutgers L.J. 341, 363 (1981) (footnote omitted).

In the past, removal was commonly denied because of the potential loss of jurisdiction over custody issues. This concern has largely been met by adoption in 44 states of the Uniform Child Custody Jurisdiction Act. *See, e.g.,* Minn.Stat. §§ 518A.01–.25 (1982). *See generally* Coombs, *Interstate Child Custody: Jurisdiction, Recognition, and Enforcement,* 66 Minn.L.Rev. 711 (1982). Further protection of the rights of both parents is afforded by the Parental Kidnaping Prevention Act of 1980, 28 U.S.C. § 1738A (Supp. V 1981).

■ We therefore hold that the following rule be applied when the custodial parent requests the court's permission to remove the child to another state:

Motions for removal brought by the custodial parent may not be denied without an evidentiary hearing, where denial would effect a modification of custody. *Hummel, supra.* Unless the party opposing the motion for removal makes a prima facie showing against removal, permission may be granted without an evidentiary hearing. *Nice-Peterson, supra.*

Motions by the custodial parent to permit removal to another state shall be granted unless the party opposing the motion establishes by a preponderance of the evidence that the move is not in the best interests of the child. Minn.Stat. § 518.18(d) (1982). If denial of the motion will likely result in a modification of custody, the trial court must consider the negative effects of separating the child and the custodial parent. *Id.* When removal is opposed for reasons of health,

education or religion, the court shall defer to the custodial parent's decisions on those matters unless it determines, after an evidentiary hearing, that failure to limit the custodial parent's authority will endanger the child's health or development. Minn.Stat. § 518.176, subd. 1 (1982). When removal is permitted, the court shall make such modifications of visitation as are reasonable and necessary to maintain a good relationship between the noncustodial parent and child, and may make appropriate adjustments in child support to spread the cost of visitation in an equitable manner, provided that such adjustments are not against the best interests of the child. If the purpose of the move is to interfere with visitation rights, removal shall not be allowed. Minn.Stat. § 518.175, subd. 3 (1982).

Relocation to another state may be prompted by a wide variety of reasons, but whether the motive is personal preference or economic necessity, the focus should remain, where the legislature has placed it, on the best interests of the child.

In view of the fact that appellant will have returned to Minnesota by the time our decision is released, we direct that the original custody order be reinstated and the child be returned to appellant pending a further hearing.

Reversed and remanded.