**In re the Marriage of Sandra R. GORDON, Petitioner,**

v.

**Stephen D. GORDON, Respondent.**

**No. C4–83–209.**

Supreme Court of Minnesota.

Oct. 28, 1983.

Rehearing Denied Dec. 8, 1983.

Phillip Gainsley, Minneapolis, for petitioner.

Robert J. Tansey, Jr., David E. Oslund, Minneapolis, for respondent.

WAHL, Justice.

Petitioner Sandra Gordon obtained permission to appeal to this court, pursuant to Minn.Stat. § 487.39, subd. 2 (1982), from a decision of a three-judge panel of the Dakota County District Court reversing the decision of the county court which authorized her to remove the parties' three minor children from this jurisdiction. We reverse and remand with instructions.

The petitioner and Stephen D. Gordon obtained a judgment and decree of marital dissolution in July 1982. The stipulated decree awarded joint legal custody of the three minor children to both parties but awarded sole physical custody to Sandra, subject to Stephen's exercise of reasonable and liberal visitation.

In October 1982, petitioner moved the county court for an order authorizing her to remove the children to Illinois. At that time, she demonstrated that she had obtained employment in that state and asserted that the change in residence would be in the best interests of the children because they would remain in the physical custody of their primary caretaker and parent. Respondent opposed the motion and sought and obtained an evidentiary hearing. He also moved that he be awarded sole physical custody of the children. Following the hearings, the county court found that throughout the marriage Sandra had been the primary parent, and further found that her continued employment at the Sister Kenny Institute in Minnesota was not secure. The court ordered that Sandra be allowed to remove the children to Illinois and denied Stephen's motion for change of custody. The court did not find that the move would be in furtherance of the children's best interests but did conclude that it would not have serious adverse effects.

Upon Stephen's appeal, the three-judge panel of the district court concluded, on review of the record, that the trial court's order allowing removal was inconsistent with respect to the "best interests of the child" test. While agreeing that Sandra had been a good parent and the primary parent, the appeals panel differed from the trial court's assessment of the facts and, in its order issued February 4, 1983, reversed. On March 22, 1983, this court granted permission to appeal and, by order dated April 22, 1983, stayed all trial court proceedings.

On June 3, 1983, this court decided *Auge v. Auge,* 334 N.W.2d 393 (Minn.1983), in which we held that a motion by the custodial parent to permit removal to another state shall be granted unless the party opposing the motion establishes by a preponderance of the evidence that the move is not in the best interests of the child. While recognizing the limited purpose of Minn. Stat. § 518.175, subd. 3 (1982), the removal statute, in safeguarding the visitation rights of the noncustodial parent, we also recognized that "[r]emoval may not be denied under this statute simply because the move may require an adjustment in the existing pattern of visitation." 334 N.W.2d at 397. We noted that in many cases denial of permission to remove would effect a change in custody, as indeed it has in the case before us, and that in modification

proceedings under Minn.Stat. § 518.18(d) (1982) the burden is on the party opposing the current custody arrangements. *Nice-Peterson v. Nice-Peterson,* 310 N.W.2d 471 (Minn.1981). Therefore, we concluded in *Auge* that section 518.18(d) should be construed as establishing an implicit presumption that removal will be permitted subject to the noncustodial parent's ability to establish that removal is not in the best interests of the child. 334 N.W.2d at 399. This case differs from *Auge* in only one significant respect. In *Auge,* the custodial parent had both physical custody and legal custody. In the case before us, Sandra Gordon was granted physical custody of the children by the court, but joint legal custody is in both parties. Do the principles and holding of *Auge* extend to cover such a case? We conclude that they do.

■ Joint legal custody under Minn.Stat. § 518.003, subd. 3(b) (1982) gives both the parents equal rights and responsibilities in making major decisions involving the education, religion and health care of the children. In making the original custody decision in July 1982, the court determined that joint legal custody was in the best interests of the children. Minn.Stat. § 518.17, subd. 3(a) (1982). The court also determined that under section 518.17, subd. 3(b), it was in the best interests of the children that their physical custody and residence be with their mother. The person who has physical custody of the children, Sandra in this case, is the "custodial parent" or "custodian" for purposes of chapter 518. Minn.Stat. § 518.-003, subd. 3(e). Treating the parent with physical custody as the custodial parent, as does section 518.003, subd. 3(e), we hold that the presumption in favor of the custodial parent's removal decision extends to cases of joint legal custody.

■ The question remaining then is whether Stephen overcame the presumption and established by a preponderance of the evidence that the move would be contrary to the best interests of the children. In our view, the appeals panel erred in concluding that he had. The dissent considers the findings of the county court regarding the best interests of the children inadequate. We note that the county court had already determined, in the initial dissolution decree, that it was in the children's best interests that the physical custody and residence be with Sandra, their primary caretaker. It was not necessary for the court to make that determination again. The burden was on Stephen, the noncustodial parent, to establish that removal was *not* in the children's best interests.

Sandra included in her motion for removal a statement of the reasons for her request and a designation of the geographic location of the proposed residence. She specifically sought an order directing visitation consistent with removal. Subsequent to the court's order of November 22, 1982, she signed and filed with the county court of Dakota County a document giving that court exclusive jurisdiction to determine any disputes involving the children. Stephen presented evidence which led the court to find that the proposed move would not be in his best interests, but the court determined that, while the move would make visitation more difficult, given the parties' resources, accommodation could be made.[1] It is clear from the record that Sandra considers the children's relationship with their father to be very important. The evidence points to a continuation of her cooperation with regard to visitation.

The appeals panel adopted findings consistent with those of the county court, disagreeing only with the ultimate conclusion with regard to the best interests of the children. We recognize that, while the county court did not conclude and was not required to conclude that the change of residence would further the interests of the children, it also did not conclude that the relocation was detrimental to or inconsistent with that criterion. Our view of the record leads to the conclusion that the pri-

---

1. The court made a finding in the decree of dissolution that Sandra's annual income was approximately $23,500 and that Stephen's an- nual income was approximately $130,000. The new employment in Chicago will give Sandra an annual income of $31,500.

mary caretaker and physical custodian's motion for authorization to remove the children to the State of Illinois must be granted. There is no evidence that the move will interfere with Stephen's involvement in major educational, religious, or health-care decisions for the children or that satisfactory visitation cannot be worked out. The matter is therefore remanded with instructions that the original county court decision be reinstated.

Reversed and remanded with instructions.

PETERSON, Justice (dissenting).

I respectfully dissent.

The decision of this court reversing the decision of the three-judge district court panel is based both upon sustaining the broad discretion of the trial court and extending the holding of *Auge v. Auge,* 334 N.W.2d 393 (Minn.1983), to joint legal custody cases. I disagree on both counts. The court remanded with instructions that the original county court decision be reinstated. I too would reverse, but, unlike the majority, I would remand with directions for the county court to make findings consistent with the evidence and the statutory mandate to analyze joint legal custody cases under the "best interests of the child" standard.

The instant case is distinguishable from *Auge* in two significant respects. First, in *Auge,* sole legal custody was placed in the mother, who was seeking removal of the child, whereas here, the custody of the children was in both parents under a joint legal custody decree. Second, in *Auge,* the trial court specifically determined that the child's best interests were served by moving, whereas in the instant case, the county court failed to determine that the move was in the children's best interests.[1]

The legislature has specifically provided that in the context of "joint legal custody" both parents have "equal rights and responsibilities, including the right to participate in major decisions determining the child's upbringing, including education, health care and religious training." Minn.Stat. § 518.-003, subd. 3(b) (1982). The extension of *Auge* to joint legal custody erodes all significance of granting both parents equal rights and responsibilities.

Once the child is removed from the state, the noncustodial parent's right to participate in the major decisions regarding the child's upbringing may be substantially diminished. Further, to impose a presumption, as in *Auge,* that the custodial parent in a joint legal custody case may remove the child from the state unless the opposing party establishes that removal would not be in the child's best interests is unprecedented. In *Auge,* we specifically declined to decide the appropriate rule for cases involving joint legal custody, because the mother was awarded sole legal custody. *See Auge,* 334 N.W.2d at 396 n. 2. The issue of joint legal custody was not a factor in any of the cases relied on by this court in *Auge,* nor was it a factor in *Nice-Petersen v. Nice-Petersen,* 310 N.W.2d 471 (Minn.1981), relied on by the majority.

The legislature has explicitly mandated that when joint legal custody is initially

1. In *Auge,* there was a unique mother-to-child relationship established centering around the child's special learning disabilities. From birth, the child suffered from a nervous twitch (tic) and a motor development handicap. Carol Ann Auge took a very active role at home and school in helping the child mature into a healthy, normal person. In 1979, she placed the child in a special education program in Roseville, Minnesota. In 1980, she enrolled the child in the Early School Experience Program, a special education program at Wildwood School in Mahtomedi, Minnesota, established to help children with learning disabilities. Teachers involved in both special education programs testified that she was the most active and supportive parent in the programs. When Carol Ann Auge moved to Hawaii, the child attended a special learning program in accord with the Minnesota programs. The father, on the other hand, intended to place the child in a public school that did not have special educational programs. The mother, moreover, had remarried and had established a family unit with this child and other children. Under the circumstances in *Auge,* clearly distinguishable from those in the instant case, there was no doubt that the best interests of the child justified removal by the mother to another state.

sought, the trial court must consider the child's best interests, as well as three additional factors, including whether it would be detrimental to the child if one parent were to have sole authority over the child's upbringing. *See* Minn.Stat. § 518.17, subds. 1, 2(c) (1982). Once the trial court determined by stipulation of the parties that the Gordon children's best interests would be served by a joint legal custody arrangement, it necessarily determined that sole legal custody in one parent would not be in the children's best interests. Any major change in this joint legal custody relationship, such as removal of the children from this state, should be made only if the change is in the children's best interests. This examination should be made without any predetermined presumptions in favor of allowing the custodial parent to remove the children from the state. The court's extension of *Auge* to instances of joint legal custody is misplaced. The focus of the trial court's findings must be "where the legislature placed it, on the best interests of the child." *Auge*, 334 N.W.2d at 400. Thus, I would adopt the view that in the context of joint legal custody, there is no presumption, but the trial court may allow removal if it is in the child's best interests.

The majority improperly substitutes its own findings of fact for those of the trial court. The court should remand this case to the trial court for findings of fact regarding the children's best interests, because the county court's findings regarding the children's best interests are wholly inadequate. I find confusing and enigmatic the county court's finding that "while it may not be in the best interests of the children to allow petitioner to remove the children

from the state, it does not appear that such a move would have serious adverse effects." This confusion and uncertainty is evinced in the record and in the county court's memorandum accompanying its findings of fact and conclusions of law. The memorandum begins with noted "misgivings" and is devoid of any analysis of the children's best interests.[2]

Quite apart from abuse of discretion, the county court abrogated its duty to clearly delineate whether the move is in the children's best interests. It failed to analyze or comment on the only expert witness' testimony opining that a move to Illinois was not in the children's best interests. The qualifications and close relationship of the expert, Dr. Mary Stevens, to the family, is unusual in this case. Dr. Stevens, a licensed consulting psychologist, was well known to the family, for she had on numerous prior occasions been employed by Sandra Gordon to counsel and study the effects of the dissolution on the children. The fact that Stephen Gordon used the same expert witness to testify concerning whether the move was in the children's best interests should be of importance to the trial court, because an analysis of what is in the children's best interests is required by the legislature. It was improper for the trial court to disregard this pertinent testimony without comment.

Because the county court's findings of fact are deficient and incomplete with respect to the pivotal issue of whether the best interests of the children are served by moving to Illinois, I would reverse and remand with instructions for the county court to making findings consistent with the evi-

**2.** It is as inappropriate for this court as it was for the district court appellate panel to make findings of fact. But, to the extent that the majority opinion does so, I think that on this record a proper finder of fact could conclude that the mother's move to Illinois was motivated by personal convenience rather than the best interests of the children. The fact that the employment she took in Illinois was substantially equivalent to the position she left in Minnesota would indicate that it was not a matter of economic necessity. It is undisputed that the children have strong educational, recrea-

tional, and religious commitments in this state, which is distinguishable from the situation in *Auge*, where the move to Hawaii provided an environmental essential to the special educational and emotional needs of the child. The majority opinion states that it is "clear from the record that Sandra considers the children's relationship with their father to be very important," but that is patently gainsaid by her insistence on a move to Illinois which so obviously thwarts the closeness and spontaneity of a daily relationship by the children with their father.

dence and the legislative mandate to determine the children's best interests.

YETKA, Justice (dissenting).
I join in the dissent of Justice Peterson.

SCOTT, Justice (dissenting).
I join in the dissent of Justice Peterson.

