Sherry L. MEYER, Appellant,

v.

Gregory A. MEYER, Respondent.

No. CX–83–1302.

Court of Appeals of Minnesota.

April 4, 1984.

Laura J. Seaton, Houston, for appellant.

Wayne E. Pflughoeft, Winona, for respondent.

Heard, considered and decided by FOLEY, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from an order denying appellant mother, the custodial parent, permission to move her sons to Seattle, Washington so she could accept a better job. The trial court denied permission because it found that the move was not reasonably necessary to the mother's employment and would deprive the father respondent of visitation. We reverse.

## ISSUE

Did the trial court err by requiring the custodial parent to prove that the proposed move is in the best interests of the children?

## FACTS

Gregory and Sherry Meyer were divorced in March 1983. The dissolution decree granted the mother custody of their two children, Chad and Wade. The father was ordered to pay $360 child support per month.

The mother began working for R.L. Polk in 1980, selling advertising space in city directories for Winona and Rochester, Minnesota, and La Crosse, Wisconsin. In 1982 she earned more than $10,000.

After the dissolution she sought additional work to supplement her income. Polk assigned her additional city directories. Her new responsibilities required longer hours and substantial travel to cities beyond commuting range. She worked 48 hours per week and anticipated spending better than half of the year on the road. She expected to earn approximately $20,-000 per year.

In June 1983, the mother asked her employer about the availability of a full time position not involving travel. Polk offered her a position in Seattle, Washington. The Seattle position would involve shorter work hours and would require no overnight travel. It would mean a potential increase in income of 25 to 30 percent, and an opportunity to advance to a supervisory position within three to six months.

The mother sought court permission to move the children to Seattle. After an evidentiary hearing, the trial court denied permission.

## ANALYSIS

■ Minnesota law presumes that a request by a custodial parent to remove a child to another state is in the best interests of the child. *Gordon v. Gordon*, 339 N.W.2d 269, 270–71 (Minn.1983); *Auge v. Auge*, 334 N.W.2d 393, 399 (Minn.1983). Permission to remove a child from the state must be granted unless the non-custodial parent establishes by a preponderance of the evidence that the move is not in the best interests of the child *or* is sought for the purpose of interfering with the non-custodial parent's visitation rights. *Auge*, 334 N.W.2d at 399, Minn.Stat. § 518.18(d) (1982).

■ Children's interests are to be considered in the context of what is best for the *family unit* made up of the children and the custodial parent. *Auge*, 334 N.W.2d at 398.

Given the inadequacy of judicial determinations as to the best interests of the child, and given that one of the few guidelines we have is the fact that continuity and stability in relationships are important for the child, courts should be restricted in their authority to interfere with post-divorce family-unit decision-making. Decisions concerning the welfare of the child should be left to the custodial parent who, by virtue of his or her relationship with the child, is best-equipped to determine the child's needs. The custodial parent should be permitted to decide where he or she and the child will reside, and that decision should be second-guessed only where it would present a "clear danger to the child's well-being."

*Auge*, 334 N.W.2d at 399 (quoting Note, *Residence Restrictions on Custodial Parents: Implications for the Right to Travel*, 12 Rutgers L.J. 341, 363 (1981)).

■ The trial court failed to apply the *Auge* standard to this case. The court found that the mother sought to move to obtain a better job, *not* to deprive the father of visitation. But instead of presuming the move was in the best interests of the children, the court weighed the economic necessity for the move against the preservation of the father's existing visitation rights. The court found the move was not "reasonably necessary" because relocation was not a condition of continued employment and because the mother could adequately support the children if she stays in the Winona area. To preserve the father's visitation rights, the court required the mother to sacrifice the chance to take a better paying job that would give her more time with her children.

The court's reasoning and conclusion ignore *Auge*. The mother has custody of the children. She is responsible for their primary care. So long as reasonable visitation can be arranged, *Auge* requires she be free to go where her best interests lie.

The court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable life style for the mother and children be forfeited solely to maintain weekly visitation by the father where reasonable alternative visitation is available and where the advantages of the move are substantial. * * *

[A] noncustodial parent is perfectly free to remove himself from this jurisdiction despite the continued residency here of his children in order to seek opportunities for a better or different life style for himself. And if he does choose to do so, the custodial parent could hardly hope to restrain him from leaving this State on the ground that his removal will either deprive the children of their paternal relationship or depreciate its quality. The custodial parent, who bears the essential burden and responsibility for the children, is clearly entitled to the same option to seek a better life for herself and her children.

*Auge*, 334 N.W.2d at 398 (quoting from *D'Onofrio v. D'Onofrio*, 144 N.J.Super. 200, 207–08, 365 A.2d 27, 30 (1976)).

The trial court found that if the mother moved the boys to Seattle the father's visitation opportunities would be curtailed by time and monetary restrictions. It is true that the father would no longer be able to visit the boys every other weekend. However, a visitation schedule calling for regular telephone calls and extended summer and holiday visits would be a reasonable alternative.

> It is at least arguable, and the literature does not suggest otherwise, that the alternative of uninterrupted visits of a week or more in duration several times a year, where the father is in constant and exclusive parental contact with children and has to plan and provide for them on a daily basis, may well serve the paternal relationship better than the typical weekly visit which involves little if any exercise of real paternal responsibility.

*Auge,* 334 N.W.2d at 398 (quoting *D'Onofrio,* 365 A.2d at 30).

The father testified that he could afford to see the boys once a year if they lived in Seattle. And the mother offered to pay for one visit each year. So, at a minimum, Chad and Wade could spend summers and Christmas vacations with their father each year. The court could reduce child support to help defray the cost of additional visits deemed necessary. Given the increase in income the mother anticipates receiving upon her move to Seattle, such an adjustment would seem to be appropriate. *Auge,* 334 N.W.2d at 400.

### DECISION

The trial court's denial of permission for the mother to move the children to Seattle is reversed. We remand for modification of visitation and child support.