**In re the Marriage of Mary LUCAS, Petitioner, Respondent,**

v.

**James LUCAS, Appellant,**

**No. C2–85–2304.**

Court of Appeals of Minnesota.

June 24, 1986.

Keith L. Miller, Moorhead, for respondent.

Michael O'Neel, Fargo, N.D., for appellant.

Heard, considered and decided by HUSPENI, P.J., and LESLIE and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

The trial court granted the mother's petition to move to Florida with the three youngest children of the parties. Appellant contends that the court abused its discretion by allowing the removal and that

the court did not properly consider the factors enumerated in Minn.Stat. § 518.17. We remand for further proceedings.

## FACTS

The marriage of James and Mary Lucas was dissolved in January 1982. Mary Lucas was granted legal custody of their four children, James (now age 18), Heather (13), Wayne (11), and Kelly (9). In December 1983, however, James Lucas was granted legal custody of the oldest child. At the time of the hearing on the petition for removal, both parties were residing in the Fargo-Moorhead area.

On September 10, 1985, respondent brought a motion for an increase in child support. On October 7, she filed another motion seeking permission to remove the children in her custody from Minnesota to Tampa, Florida. The trial court determined that the motions were interrelated and heard testimony on both subjects on October 17 and 29, the dates previously chosen for separate hearings on the two motions.

In her removal request, respondent gave three reasons for changing her residence to Florida: the climate, a new job with better pay, and the plan of her fiancee Dan Taylor to move to Tampa. Her third reason produced the conflict in this case.

Initially, appellant did not oppose the move to Florida. When the removal request motion was filed, he presented no opposing affidavit, and he made no prima facie case prior to the evidentiary hearing on October 17. In chambers before the hearing, respondent's attorney objected to the evidentiary hearing. Appellant's attorney stated that the testimony anticipated from the children would establish a prima facie case, and the trial court granted the hearing.

Respondent had accepted a position as a nurse in the burn unit of Tampa General Hospital. She had rented a three bedroom apartment with a playground and swimming pool on the premises. At the October 29 hearing, respondent indicated that she had to start her job in Florida the following Monday and she would have to leave to fulfill her obligations whether or not the children were permitted to move with her. At this point her fiancee had already left for Florida, driving a U–Haul with most of her belongings.

Mary Lucas testified that Dan Taylor and the children got along well. She said that he did not yell at the children but supported her when she had to discipline them. At the October 17 hearing Mary Lucas testified that Dan Taylor would be caring for the children while she was working the evening shift at the hospital. After Taylor's former wife testified, however, Mary Lucas indicated that she would not let Dan care for the children and would not leave him alone with the children.

The testimony of Dan Taylor and his prior wife Joan Taylor was sharply in conflict. Dan Taylor testified at the October 17 hearing but Joan Taylor testified at the October 29 hearing. Dan Taylor left for Florida before the second hearing and did not answer the questions raised by Joan Taylor's testimony.

Dan Taylor testified that he and respondent had only dated for about a month before becoming engaged but had known each other as friends for three years. He stated that he got along with respondent's children and tried to do family type activities with them.

Joan Taylor testified that Dan Taylor had badly misrepresented his educational background, his military experience, and his activities in community service. She also stated he had paid no support for his child since the separation of the couple over a year earlier. She said Taylor had also had three other marriages and had no relationship with two older children. Further, she stated that while she was married to Dan Taylor he frequently exhibited bad temper and twice had physically abused her. She said Taylor had been out of work for several months during each of the four years of their marriage and took financial advantage of employers and family members.

The three children were interviewed in chambers during the October 17 hearing. Wayne and Kelly expressed no substantial concerns about the move or Dan Taylor. Heather expressed a great dislike for Taylor. At the October 29 hearing, the trial court once again questioned Heather. She indicated that her mother and Dan Taylor had grilled her twice about the substance of her last interview with the trial court, once for about three hours, and that they were angry about her comments, yelling at her and calling her names. She claimed that Dan Taylor threatened to send her to a "funny farm" if she ever "screwed up like that again." Heather said she believed him because he was a psychologist.

At the end of the October 29 hearing, the trial court granted the motion to remove the children to Florida but expressed its reservations about the move by stating as follows:

> I'm going to allow the move and my concern is that down deep, subconsciously I'm wondering whether I'm allowing it only because you've taken all these big steps toward the removal. And I guess there is truth to what you say, Mr. O'Neel, if a person has not taken the job and not committed themselves to it then the immediate question arises is there really any jobs to be had down there. And so there is this dilemma of whether one takes a job and burns those bridges prior to a hearing or not. I still am a little dubious of what's happened since the 17th of October when it looked like there was still that possibility of being able to withdraw from it and why that same situation couldn't have been true even until this date. In other words I get the impression that I'm kind of ruling maybe in order to fit the convenience of your schedule. And this may or may not be the appropriate way. I have this feeling though that in the course of the months to come if the situation doesn't work out, well you may rue the day that you made the move. Only time will tell.

## ISSUE

Did the trial court abuse its discretion when it unconditionally granted respondent's motion to remove the children in her custody from Minnesota?

## ANALYSIS

■ ■ It is presumed that a request by a custodial parent to remove a child to another state is in the best interests of the child. *See Gordon v. Gordon,* 339 N.W.2d 269, 271 (Minn.1983). If a denial of the motion to remove would effect a modification of custody, as is the case here, an evidentiary hearing must be conducted only if the noncustodial parent makes a prima facie showing against removal. *Auge v. Auge,* 334 N.W.2d 393, 399 (Minn.1983). At the evidentiary hearing the noncustodial parent must establish by a preponderance of the evidence that the move is not in the best interests of the child. *Auge,* 334 N.W.2d at 399. *See* Minn.Stat. § 518.18(d) (1984) (court will not modify a custody order unless necessary to serve the best interests of the child).

We will affirm the trial court's custody decision so long as the court has not abused its discretion by making unsupported findings or improperly applying the law. *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985).

A determination of the best interests of a child requires a consideration and evaluation of several factors, including:

> (c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (g) The mental and physical health of all individuals involved \* \* \*

Minn.Stat. § 518.17, subd. 1 (1984).

The trial court made the following findings on these factors:

> 2. \* \* \* That the change of residence of the children from Moorhead, Minnesota to Tampa, Florida, is in the best interests of the children, is not made

with the purpose of interfering with the respondent's visitation of the children, and represents no endangerment to the physical or emotional health of the three minor children in the custody of the petitioner.

3. The court does express some reservation about the proposed step-father, Dan Taylor, but finds this an insufficient reason to deny removal, particularly since the petitioner herself expressed concern over many of the facts that were presented at the hearing and stated that she would make further inquiry.

4. Therefore, the Court feels that the petitioner is free to go where her best interest lie, taking the children with her, and especially since she is willing to adjust a visitation schedule so that the father and child relationship may be continued. It is in the best interests of the children to move with their primary caretaker and to keep the family unit composed of the mother and the minor children in tact.

■ As the trial court appreciated, there are several factors in this case showing the prospect for potential problems surrounding the removal of the children to Florida. The move was a major one significantly removing the children from their father and family. Mary Lucas demonstrated inflexibility by testifying she would leave for Florida even without the children and not articulating other alternatives. Evidence that Dan Taylor was irresponsible and ill-tempered was not resolved in his favor. At the October 29 hearing, Heather gave testimony about self-serving and abusive pressure brought upon her by Mary Lucas and Dan Taylor, raising questions about her emotional well-being.

Despite these questions, we acknowledge that the evidence does not compel modification of custody as an alternative to removal of the children to Florida. However, given the potential dangers to the children's best interests, it is not within the broad discretion of the trial court to unconditionally permit the removal without a more careful study of the circumstances of the parents and children. The trial court observed:

* * * I get the impression that I'm kind of ruling maybe in order to fit the convenience of your schedule. And this may or may not be the appropriate way. I have this feeling though that in the course of the months to come if the situation doesn't work out, well you may rue the day that you made the move. Only time will tell.

Because respondent did not offer answers to the testimony of Joan Taylor, the record reflected a risk that removal of the children would be harmful to them. The fact that respondent did not rebut answers to the questions raised at the hearing left the trial court with the burden, before it finally approved the move, to uncover reliable evidence to show the best interests of the children. *See Rosenfeld v. Rosenfeld*, 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976) (custody statutes impose duty on the trial court to consider and make particular findings regarding the best interests of the children). A demand for further evidence or a child welfare study is necessary so the trial court can determine that the move does not endanger the children.

We respect the trial court's confidence in respondent. On the other hand, the evidence before the court put her judgment into question, and the essential interest of the trial court in protecting the children requires a more cautious approach.

## DECISION

It was error to unconditionally grant respondent the right to remove the three children to Florida. We affirm but modify the court's order such that it is conditioned upon review proceedings to be conducted before October 1, 1986; in addition to any other evidence at the hearing, there is to be obtained a child welfare study if necessary to obtain reliable information on the current circumstances of the children. We remand for these review proceedings.

Affirmed as modified and remanded.