**Vicky Lyne BENSON, Appellant,**

v.

**Kenneth L. WEBB, Respondent.**

**No. C3-83-2047.**

Court of Appeals of Minnesota.

Oct. 9, 1984.

---

Karen M. George, Southern Minnesota Regional Legal Services, Inc., Albert Lea, for appellant.

Roger E. Petersen, Petersen & Stephenson, Rochester, David Hoversten, Hoversten, Strom, Johnson & Rysavy, Austin, for respondent.

Heard, considered and decided by SEDGWICK, P.J. and NIERENGARTEN, and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Vicky Lyne Benson appeals the order of the trial court which modified a foreign custody decree by transferring custody of Kelly Webb from appellant to respondent. Appellant asserts that it was improper for the trial court to modify the custody decree because it lacked subject matter jurisdiction over the case. Appellant further contends that the evidence was insufficient to sustain the trial court's decision to transfer custody. We affirm.

## FACTS

Kenneth L. Webb and Vicky Lyne Webb were divorced on February 8, 1979. The decree of divorce was granted in Dallas County, Texas. At the time of the divorce it was also decreed that Vicky Webb be appointed managing conservator of the parties' minor child, Kelly Dawn Webb, born August 2, 1974. Kenneth Webb was appointed possessory conservator of the child. In language used by Minnesota courts, Vicky Webb was granted sole custody of Kelly and Kenneth Webb was granted visitation rights.

In December of 1979 Vicky married Roger Benson. The new household was made up of three children from Roger's previous marriages—Troy, Michelle and Randy—plus Kelly Webb. Vicky and Roger have since had two more children, for a total of six children currently in the Benson home.

Since their marriage, the Bensons have moved from twelve to sixteen times in search of employment for Roger Benson. They have lived in Florida, North Carolina, Texas, Iowa and Minnesota; the older children estimate they have been in as many as twenty different schools. The Benson family currently resides in Austin, Minnesota.

Kenneth Webb has maintained residency in Texas since his divorce from Vicky. He has regularly made child support payments, and has maintained a close relationship with Kelly through extended visits during Christmas and summer vacations. In December of 1980 Kenneth Webb also remarried. His wife, Tamara, had two sons from a previous marriage, and they have lived with the Webbs since the marriage. Kenneth is employed with Rockwell International, and has a yearly income of $28,700.00. The Webbs recently built a new house and currently reside in the Fort Worth suburb of Keller, Texas.

In May of 1983 a dependency petition was filed in the Mower County Court (Minnesota) alleging that Kelly, as well as Troy, Randy and Michelle, were victims of child abuse. As a result of the petition Troy, Randy and Michelle were temporarily removed from the Benson home and placed in foster care. Kelly was placed on an extended visit with her father in Texas.

In June 1983, Kenneth Webb filed a motion seeking a modification of the custody decree. The motion was made upon the grounds that Kelly's present environment could endanger her physical or emotional health or impair her emotional development. It was further alleged that a substantial change had occurred in the circumstances of Kelly or her custodian and that an amendment or modification of the custody decree was necessary to serve the best interests of the child.

On September 22nd and 23rd, 1983, a hearing was held in Austin, Minnesota. Testimony was heard from both parents and their spouses, from friends and acquaintances of the parties, from Betty Young, guardian ad litem for Kelly, and from Gerald Lilja, a psychiatric social worker for the Mower Mental Health Center in Austin. Testimony was also heard in chambers from Troy Benson.

At the conclusion of the hearing, Kenneth Webb was awarded sole custody of Kelly, and Vicky Benson was granted reasonable rights of visitation, and Vicky appealed.

## ISSUES

1. Did the trial court err in asserting jurisdiction to modify the foreign custody decree?

2. Was the evidence presented at the hearing adequate to support the trial court's conclusion that custody should be transferred from appellant to respondent?

## ANALYSIS

1. *Jurisdiction*

■ Appellant asserts it was improper for the trial court to modify the Texas custody decree because it lacked subject matter jurisdiction over the case. This contention is based upon an interpretation of Minn.Stat. § 518A.15 (Supp.1983) which would require that a certified copy of the original foreign custody decree be filed with the court before modification proceedings could begin.

Respondent's attorney did attach an *uncertified* copy of the Texas custody decree to his motion for modification when he originally filed in Mower County Court. When it was later discovered that appellant believed that a *certified* copy should have been filed, respondent filed a certified copy with the court. Though it may have been better practice for respondent's attorney to obtain a certified copy and file it with the court before initiating the proceeding, any jurisdictional defect with respect to Minn.

Stat. § 518A.15 was cured when the certified copy was filed. Appellant did not argue any prejudice to her case due to the chronology of respondent's actions.

Minn.Stat. § 518.155 (1982) requires that all modifications of custody decrees which affect the custody of a minor child must meet the jurisdictional provisions of the Uniform Child Custody Jurisdiction Act (U.C.C.J.A.), Minn.Stat. §§ 518A.01 to 518A.25 (Supp.1983). Section 518A.03 sets out the jurisdictional provisions of the U.C.C.J.A. It provides in relevant part:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or *modification decree* if: a) this state 1) is the home state of the child at the time of commencement of the proceeding * * * (emphasis added).

Minnesota must be considered Kelly's home state. It is the state in which she has lived for the year previous to the commencement of these proceedings, and it is also the current home state of her mother. Thus, Minnesota has jurisdiction over the motion for change of custody under § 518A.03 of the U.C.C.J.A.

### 2. *Custody*

Under Minnesota law, findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Rule 52, Minn. R.Civ.P. In custody cases, the trial court has broad discretion and will not be reversed unless there is a clear abuse of that discretion. *Peterson v. Peterson,* 308 Minn. 365, 242 N.W.2d 103 (1976). A trial court sees the evidence first hand and can judge credibility of oral witnesses better than a reviewing court looking at a dry written record. Where credibility of witnesses is the major issue, appellate courts should be reluctant to overturn the trial court. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252 (Minn.1980).

▪ Minn.Stat. § 518.18 (1982) governs modifications of custody orders. *State ex rel. Gunderson v. Preuss,* 336 N.W.2d 546,

547 (Minn.1983). If there is to be a change in custody, section 518.18 clearly requires more than a finding that the transfer of custody is in the best interests of the child. *Id.* at 547, 548. Thus, for a custody modification, the court must first make a two-fold finding: (1) that a change has occurred in the circumstances of the child or his custodian, and (2) that the modification of custody is necessary to serve the best interests of the child. *Id.* at 548. However, the above are but threshold standards the court must consider. The statute provides that in applying these standards "the court shall retain the custodian established by the prior order" unless, as set out in subparagraph (iii), "the child's present environment endangers his physical or emotional health or impairs his emotional development" *and* that "the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." Minn.Stat. § 518.18; *Gunderson,* 336 N.W.2d at 548.

▪ The trial court found "significant and negative changes in the circumstances of the child, Kelly Dawn Webb, and the respondent [Vicky Benson] since the divorce in 1979." Among the changes cited by the court were: 1) the twelve to sixteen moves made by the Bensons during their marriage and the many school changes resulting from these moves; 2) the physical punishment and verbal abuse to which Kelly Webb has been subjected by her mother and stepfather, and 3) the financial stress which the Benson family has undergone due to Mr. Benson's inability or failure to find steady employment.

The court further found that the punishment and verbal abuse are harmful to Kelly psychologically as well as physically and concluded that the "environment of living with Respondent [appellant herein] as her custodian endangers said child's physical and emotional health, impairs her emotional development, and any harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." Finally, the court found that a

transfer of custody was necessary to serve the best interests of the child.

Thus, the trial court's decision appears to meet the two-part test of *Gunderson.* Appellant, however, contends that the trial court erred in basing its findings of fact on evidence not a part of the record of this case. Specifically, appellant complains that the dependency petition and the records connected with that petition unduly influenced the court's decision. We do not agree.

Appellant cites the testimony of herself and Roger Benson, Kelly Webb and Troy Benson in support of the contention that the punishment received by Kelly and the other children was not as severe as the trial court found. Such testimony, however, was contradicted by that of the psychiatric social worker at the Mower Mental Health Center and by that of the psychiatrist who evaluated Kelly Webb.

Inasmuch as there was contradictory evidence regarding the use of corporal punishment in appellant's household, the trial court necessarily had to make a determination of the various witnesses' credibility. The court reasonably chose to give greater weight to the two professionals' testimony than that of parties who had a personal interest in the matter. It is the explicit duty of the trial court to make assessments of credibility, and this court will not second-guess that judgment unless it is clear it had no reasonable basis.

The trial court properly made its assessment of the credibility of the witnesses with respect to the issue of the disciplinary practices of appellant's household. This determination, coupled with the record of the many moves and school changes the children have undergone, and the shaky financial situation of appellant's household, is enough evidence to support the trial court's decision to transfer custody of the minor child from appellant to respondent. The trial court's findings were based on a sufficient record.

### DECISION

The trial court had proper subject matter jurisdiction to hear this case. The evidence presented at the custody hearing was sufficient to support the trial court's determination that custody of the minor child should be transferred from appellant to respondent. Affirmed.