**In re the Marriage of Donna Jean SCHULTZ, Petitioner, Appellant,**

v.

**Gerald Frederick SCHULTZ, Respondent.**

**No. C2–85–1718.**

Court of Appeals of Minnesota.

March 11, 1986.

Shirley A. Dvorak, Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, for appellant.

Charles W. Reynolds, Erickson, Erie, Odland, Fitzgerald & Reynolds, Crookston, for respondent.

Considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

### FACTS

Appellant Donna Schultz and respondent Gerald Schultz were married in 1967. Appellant is now 49 years old and respondent is 45 years old. They have two children—David, age 16 and Rebecca (Becky), age 12. Appellant commenced this action on August 29, 1984. At that time she was working part-time as a receptionist, earning $4.75 per hour. Respondent was working at Dahlgren & Company in Crookston where he had worked for seventeen years. He was earning approximately $38,500 per year. Their employment pictures apparently have not changed significantly.

On September 14, 1984, the Polk County Court filed an order granting appellant temporary physical custody of the children and temporary possession of the parties' home. Respondent did not contest custody of the children at this time. In January 1985, respondent apparently allowed David to move in with him even though the court order stated that David should live with appellant. On February 13, respondent moved for custody of the children. After a hearing, the court denied this motion and ordered respondent to return David to his mother.

Court-ordered psychiatric evaluations were conducted, as was a custody study and report. The psychiatric evaluations contained no evidence indicating that one parent should be granted custody over the other. The report did note that respondent admitted that he bad-mouthed appellant in front of the children and that this undoubtedly had some influence on them, especially Becky. The psychiatric evaluation of David contained indications that he disliked his mother and that he "had nothing good to say about his mother." The evaluation of Becky showed that she wanted to live with her father. The report stated, however, that she had probably been influenced by her father and her brother to whom she was strongly attached.

A custody study was also prepared. The report contained no information showing either party was not fit to raise the children. The report did note that David "does not respect his mother and has currently disassociated himself from his mother" and that he "expressed a strong desire to be

allowed to live with his father." The report noted that Becky felt very close to her brother and that she wanted to live with her brother, and preferably with her father because she felt she had a better relationship with him. The report concluded by recommending that respondent be granted custody of both children.

On July 16, 1985, findings and judgment on this matter were entered. In its findings of fact the court stated that both parents were actively involved in caring for the children and although appellant had been the primary caretaker when the children were younger, respondent had taken a much more active role as the children grew older. The court also found that both parents had been critical of the other in the presence of the children but that respondent had engaged in such conduct to a greater degree than appellant. David's relationship with appellant had been "difficult" for many years and he was then "very hostile towards his mother at the present time and expresses a strong, unequivocal preference to live with his father." The court found that Rebecca had enjoyed a good relationship with her mother in the past but that relationship had deteriorated and she preferred to stay with David and to live with her father. The court noted the custody report's recommendation that respondent be granted custody of the children, and held that respondent would receive custody of the children.

The court awarded to respondent the homestead subject to the following provision: for twelve months following the judgment appellant would have a lien in the amount of $19,067.00, which constituted 50% of the equity in the house and 23.83% of the market value of the property. After twelve months the lien would be 23.83% of the property value and could be paid at any time. If the property were not sold earlier, the property would be sold and the lien paid when the parties' youngest child is graduated from high school and has attained the age of 18 years. Respondent was awarded an automobile, his pension plan, a life insurance policy, their income tax return check, and the personal property in the homestead. In lieu of appellant's interest in this property, she was awarded $6,000. Appellant was also awarded an automobile, 158 shares of Beatrice stock, $6,000, and monthly maintenance of $400. The court further ordered both parties to pay their own attorney's fees.

## ISSUES

1. Did the trial court err in granting respondent custody of the children?

2. Did the trial court err in its distribution of property?

3. Did the trial court err in not ordering respondent to pay appellant's attorney's fees?

## ANALYSIS

1. Minn.Stat. § 518.17, subd. 3 (1984) provides that "[i]n determining custody, the court shall consider the best interests of the child * * *." In determining the best interest of the child § 518.17 subd. 1 compels the court to consider "all relevant factors," including the "reasonable preference of the child," and the "interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests." The scope of our review is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985).

Appellant suggests that this case is controlled by *Pikula.* It does appear that appellant was the primary parent of the children throughout the marriage. However, appellant reads more into *Pikula* than she should. In *Pikula* the court held that "when both parents seek custody of *a child too young to express a preference* for a particular parent and one parent has been the primary caretaker, custody [should] be awarded to the primary parent absent a showing that that parent is unfit to be the custodian." *Id.* at 713 (emphasis added).

In the present case, both children expressed a preference to live with respondent. At the time of the hearing David was 16 and Becky was 12. No one has suggested that David was not old enough to express a preference. Although appellant argues that Becky, who is intellectually immature, is not old enough to express a preference, there was testimony supporting a finding that she was mature enough to express a preference. The trial court specifically found the children were not too young to express a preference for a particular parent, and we cannot say that this was error.

The evidence clearly shows that the children expressed a preference for living with respondent. The evidence also showed a strong bond between the two children, a fact which must be considered. See Minn. Stat. § 518.17 subd. 1(c). On the basis of the children's preference, their inability to get along with appellant, and their desire to remain together, we cannot say that the trial court abused its discretion in awarding respondent custody of the children.

Appellant contends that the children's preferences should not be considered because respondent undercut appellant's relationship with the children by constantly denigrating appellant in the presence of the children. The trial court was fully aware that respondent had made disparaging comments about appellant, but the evidence also showed that appellant had made similar comments about respondent. It is difficult for this court to determine what effect this behavior had on the children. We, of course, condemn this conduct and caution against its continuance as to both parents. It is significant that the trial court, who had the benefit of seeing the parties, obviously felt that the children's preference should be considered.

Appellant also argues that the custody determination should be reversed because it was based on a custody report that was based on irrelevant information. This argument is unpersuasive. The weight of evidence is for the trial court to determine, and not this court. There is no indication that the trial court based its decision on irrelevant material. Furthermore, appellant's counsel vigorously attempted to impeach the report at the hearing. We conclude that the trial court did not err in its custody determination.

2. Appellant next contends that the trial court erred in its distribution of material property. It is well established that the trial court has broad discretion in dividing marital property and this court should not reverse its determination absent a clear abuse of discretion. *Bogen v. Bogen,* 261 N.W.2d 606, 609 (Minn.1977).

Appellant contends the trial court abused this discretion in awarding respondent use of the home with respondent only receiving a lien and she will not be able to realize her share for five more years. Although she recognizes that liens have been approved, *see Filkins v. Filkins,* 347 N.W.2d 526 (Minn.Ct.App.1984), she argues that respondent should pay her her share of the equity of the home immediately. This would make the present value of the distribution more equal. However, because respondent does not have the liquid assets to pay this amount, the house would have to be sold. This is not a particularly attractive alternative because the house is being used as the home for the children. The lien allows the house to be used as the home for the children while also allowing appellant to receive her share when that condition no longer exists. Because the remainder of the assets were divided equally, we hold that the trial court did not abuse its discretion in dividing the marital estate.

3. Appellant finally requests that respondent pay her attorney's fees. Pursuant to Minn.Stat. § 518.14, the court may award attorney's fees to a party in a dissolution. In determining whether an award of attorney's fees is appropriate, the trial court is to consider the party's need for financial assistance to protect his or her rights in the dissolution proceedings. Minn.Stat. § 578.14 (1984); *Frederiksen v. Frederiksen,* 368 N.W.2d 769, 778 (Minn. Ct.App.1985). Granting of attorney's fees is largely at the discretion of the trial

court. *Cummings v. Cummings*, 376 N.W.2d 726, 732 (Minn.Ct.App.1985).

We hold that the trial court abused its discretion in the present case by not granting appellant any attorney's fees. The record shows that appellant incurred substantial attorney's fees. The trial court specifically found that she will not have sufficient income or property to provide for her needs. It is clear that she would have to liquidate a substantial portion of her property award to pay the fees. Respondent's income is substantially higher than appellant's and he is clearly more able to pay the fees. We therefore remand the matter so the trial court can award appellant reasonable attorney's fees.

### DECISION

We affirm on the issue of child custody and distribution of the marital estate. We reverse and remand on the issue of attorney's fees.

Affirmed in part, reversed in part and remanded.