**In re the Marriage of Larry D. UHL, Petitioner, Appellant,**

v.

**Hyon Suk UHL, Respondent.**

**No. C6–86–727.**

Court of Appeals of Minnesota.

Oct. 28, 1986.

William J. Mavity, James G. Ryan, Mavity & Ryan, Minneapolis, for appellant.

Barry A. Sullivan, Stockman, Sullivan & Sadowski, Coon Rapids, for respondent.

Considered and decided by HUSPENI, P.J., and PARKER and RANDALL, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant, Larry Uhl, petitioned to dissolve his marriage to respondent, Hyon Uhl. The parties stipulated to the division of marital property and submitted the issue of custody of their two children to the trial court, which granted custody to respondent. On appeal, appellant argues that the trial court erred when it applied the primary parent presumption because the children were old enough to express a preference, and that the trial court's finding that respondent is a fit parent is clearly erroneous. We remand for further proceedings consistent with this opinion.

## FACTS

At the time of the parties' dissolution, appellant and respondent had been married eleven years and had two children, a daughter ten years old and a son eight years old.

At the custody hearing, both parties testified about their parenting skills and relationship to the children. Appellant testified that since the separation the children have spent every weekend with him. At the time of the hearing appellant was living in a motel, was unemployed, had no income and his unemployment compensation had expired.

Appellant expressed concern that the children had suffered physical and emotional abuse at the hands of respondent. He stated that respondent had hit the children, especially the daughter, with a wooden spoon, and that these actions had at one time left a bump on the child's head and at other times had left bruises on her legs. Appellant alleged that on another occasion in October, 1985, respondent hit the daughter causing a cut and swollen lip. Appellant stated that the child initially told him that she had fallen on the stairs but the son said that respondent had hit his sister. The daughter then admitted that respondent had hit her. Appellant reported this incident to the Anoka County Child Protection Service.

Appellant also indicated that respondent demeans him in front of the children and has encouraged the children to call him names. He said that respondent also degrades the children calling them "retarded" and "stupid." He further stated that respondent uses profanity in front of the children. Finally, appellant expressed concern that the children are left unsupervised when respondent has to work late.

Respondent testified that she has suffered much emotional abuse at the hands of her husband and that this abuse has caused her problems with her children. Respondent admitted that she has struck the children, especially her daughter, in the past. She said that the incident that caused the cut lip was not an intentional hit but rather an accident. She thought that her ring must have caught the child in the face, causing the cut. Likewise, respondent testified that the bump on the daughter's head from the wooden spoon was not intentional. Respondent admitted that she told the children to lie about the cut lip incident and to tell their father that the child had fallen down stairs.

In chambers, the daughter did not express fear or concern about how her mother disciplined her. She indicated that she was punished when she misbehaved and that her mother only brought out the wooden spoon when she had done something especially out of line. She said that she could live with either parent. The son stated that he preferred his time with his father primarily because his father did not make him do chores and did not discipline him as much as his mother.

Several treatment personnel who had worked with the parties also testified. Jory Rasmussen, a social worker with the Anoka County Child Protection Services, testified that his office had handled two reports of abuse concerning respondent and the daughter. The first complaint was received as a referral from a visitation mediator working with the parties. The report indicated that respondent had admitted hitting the daughter and calling both the children names.

Respondent told a student social worker, working under Rasmussen, that during the marriage she was abusing the daughter three times a week but that she had not been abusing her since the separation because she is more in control. The social worker told respondent that she must obtain counseling for both herself and her children. As of October 15, respondent had sought help for herself, but had not sought help for the children.

On October 15, 1985, appellant reported to Rasmussen the incident resulting in the cut and swollen lip. Rasmussen went to the school and interviewed both of the children. Both children and respondent confirmed that the daughter had talked back to her mother after being told to do something. Respondent reacted by swinging at the child and hitting her in the mouth. As a result of his interviews, Rasmussen referred respondent and the children to the Central Center for Family Resources where respondent had been treated in the past.

Charles Johnson, a family therapist at the Central Center for Family Resources, also treated the family. He had one session with appellant and respondent, eight sessions with respondent, five sessions with the children and two sessions that were half with the children and half with the children and respondent.

Johnson testified that the children exhibited a strong loyalty and good relationship with their mother. They did not appear fearful of her and showed respect for each other. They appeared to be well adjusted normal children. He also found that both children interacted appropriately with their father. When Johnson talked with the children about the custody choice, the daughter always expressed a preference for living with her mother while the son vacillated between the two parents.

Johnson could not say what would be in the children's best interest because he did not do a home visit or have any substantive time with appellant. He did say that even knowing about the abuse, he still believed that respondent was an adequate custodial parent.

Hilary Vickman, a school counselor, conducted the custody evaluation for the trial court. He testified that he had met twice with the respondent and appellant individually and once with the parties and the children. The evaluation took place over a three week period from mid-August to early September of 1985.

Vickman stated that respondent's behavior is impulsive when under stress. He testified that he had construed appellant's concerns about abuse as negative remarks about respondent rather than actual concerns for the children's safety. Vickman said that there was no evidence of abusive behavior, only assertive behavior. Vickman acknowledged that his study concluded before the October 15 incident and that these subsequent events might change his opinion but he did not have enough information to reach a conclusion.

The trial court concluded that respondent was the primary parent and was "the fit and proper person to have the care, custody and control" of the parties' children. In its accompanying memorandum the trial court noted:

This Court believes that there has been some abuse in the period prior to the physical separation, but that the extent of the abuse is uncertain. There is a claim that the mother hit the children and used a wooden spoon for assaults on the children. There have been two investigations by child protection which have verified some form of abuse. * * * The custody evaluator has stated to the Court that, although there can be exceptions, his observations of the children do not disclose behavior which would be associated with abuse. Any problem that may have existed has been remedied by a referral to counseling. The Court believes that the mother needs continued help with her parenting skills from the counselor and also needs further counseling to deal with her impulsiveness and her reaction to stress. In spite of these concerns the Court still agreed with the

custody evaluator that, based on all of the evidence going over the entire marriage, it is in the best interests of the children that custody be with the mother.

Although this Court is reluctant to accept custody studies at face value in every case, in this particular case the Court has given deference to the custody evaluation. * * * The evaluator * * * opined that the mother is an adequate custodian. The evaluator has also investigated and evaluated the alleged abuse. Although the Court has continuing concern, the work product of the evaluator convinces the Court that this issue is exaggerated and what problems do exist are under control.

### ISSUES

1. Did the trial court err by considering the primary parent presumption when the children were old enough to express a preference?

2. Did the trial court abuse its discretion when it found respondent was a fit parent to have custody of the parties' children?

### ANALYSIS

On appeal, this court's review of custody determinations "is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985).

### I.

Appellant argues that the trial court improperly applied the law because it employed the primary parent presumption. Appellant contends that the primary parent presumption enunciated in *Pikula,* 374 N.W.2d 705, does not apply when the children are old enough to express a preference.

The trial court's findings of fact state only that:

10. Respondent has been the primary parent and is the fit and proper person to

have the care, custody and control of the minor children of the parties.

In its accompanying memorandum, however, the trial court noted that in order to make a custody determination a court must determine the best interests of the child under the factors enumerated in Minn.Stat. § 518.17, subd. 1 (1984). The memorandum states:

The Court has painstakingly reviewed all of the evidence submitted by the parties in light of these factors. * * * [A]ll of these factors have been considered in the Court's decision.

These comments indicate that the trial court did not make its decision based solely on a presumption that the primary parent should be the custodial parent but rather used this as one factor when considering all the factors under section 518.17, subd. 1.

▮ Consideration of which parent has been the primary parent is not determinative where a child is able to express a preference. In *Pikula* the supreme court noted that the guiding principle in all custody cases is the best interest of the child and that under section 518.17, subd. 1:

the enumerated statutory criteria, even absent consideration of other relevant factors, mandate that, when the evidence indicates that both parents would be suitable custodians, the intimacy of the relationship between the primary parent and the child should not be disrupted "without strong reasons which relate specifically to the [primary] parent's capacity to provide and care for the child."

*Pikula,* 374 N.W.2d at 711 (quoting *Berndt v. Berndt,* 292 N.W.2d 1, 2 (Minn.1980)). In the present case appellant does not challenge the trial court's determination that respondent was the primary parent. We find no abuse of discretion in the trial court's reliance on this factor along with others when making its custody decision.

▮ Appellant also contends that the trial court erred because it refused to ask the children their preference and supposedly ignored the children's expressed preference when determining their best interests. A

child's preference may be important and in close cases a deciding factor as to which parent will have custody of the child. *See Schultz v. Schultz*, 383 N.W.2d 379, 382 (Minn.Ct.App.1986). On the other hand, the reasonable preference of a minor child is but one factor to consider in custody disputes. *Madgett v. Madgett*, 360 N.W.2d 411, 413 (Minn.Ct.App.1985). The decision about whether to interview a child to establish the child's preference is for the trial court's discretion. *Id.*

■ We note that the record shows that on several occasions when meeting with counselors and the custody evaluator the parties' daughter expressed a preference to live with her mother. Their son vacillated between parents when asked at different times to express a preference. Under these facts, we do not believe that the trial court totally disregarded the children's preferences by not directly asking them to state a preference.

## II.

Next appellant argues that the trial court's finding that respondent was a fit parent was clearly erroneous. Appellant specifically points to the incidents of physical abuse reported to Child Protection Services.

The trial court had before it the testimony of both parents, the children, a custody evaluator, a family therapist and a social worker. The trial court indicated that while it had continuing concern about the children and the alleged abuse, the custody evaluator's report had convinced the court that these problems were exaggerated and under control.

In *Benson v. Webb*, 356 N.W.2d 352 (Minn.Ct.App.1984) the trial court was faced with a similar decision. This court noted:

Inasmuch as there was contradictory evidence regarding the use of corporal punishment in appellant's household, the trial court necessarily had to make a determination of the various witnesses' credibility. The court reasonably chose to give greater weight to the two professionals' testimony than that of parties who had a personal interest in the matter. It is the explicit duty of the trial court to make assessments of credibility, and this court will not second-guess that judgment unless it is clear it had no reasonable basis.

*Id.* at 356. Likewise, in the present case we will not second-guess the trial court's assessment of the custody evaluator's credibility.

However, we share the trial court's continuing concern especially in connection with the limited scope of the custody evaluator's report. The evaluator testified that he had met twice with the respondent and appellant individually and once with the parties and the children. His evaluation was conducted over approximately a three week period from mid-August to early September 1985. On cross-examination the custody evaluator acknowledged that he was not familiar with the Child Protection Services involvement with the parties.

Q Are you aware that there was any report made to the Child Protection of any alleged abuse prior to your receiving this case on August 12th or meeting with the parents on August 12th?

A Yes. [The visitation mediator] had mentioned that, but she, in her mind, did not think it was substantive enough to pursue.

Q Are you aware of whether or not that was confirmed by Child Protection that there was the hitting going on?

A Not to my knowledge. Hitting or that there was abuse?

Q Any abuse?

A No.

Q Are you aware that there was another report made to Child Protection after your custody evaluation was completed?

A Yes, but I don't have any—My obligation in terms of making a recommendation was concluded when I submitted this, and that would be

evidence that somebody else would have to attest to.

The involvement of Rasmussen, the social worker, was limited to investigation and referral for counseling. Johnson, the family therapist, testified that his involvement with the entire family had not been substantial enough to state what would be in the children's best interests. In his recommendation, Vickman, the custody evaluator, had no opportunity to address the report that was made to Child Protection Services after his evaluation was completed.

■ While reliance on expert testimony is within the trial court's discretion, we believe that testimony should be based on a complete evaluation of all the circumstances bearing on a parent's fitness. In this case the custody evaluation which the trial court relied on did not encompass a careful examination of allegations of physical abuse. Considering the serious nature of these allegations, we believe the custody evaluator should have an opportunity to update his evaluation. We remand to permit that updated report. The trial court shall so direct and shall assure that the updated report addresses with specificity any involvement of Child Protection Services in this matter subsequent to the evaluator's September 1, 1985 report. Upon receipt of the updated report either party, or the trial court on its own motion, may place this matter on for review hearing. *See Lucas v. Lucas*, 389 N.W.2d 744 (Minn.Ct. App.1986) (where evidence left unanswered questions trial court had burden to uncover reliable evidence to determine the best interests of the child).

## DECISION

The trial court did not abuse its discretion when it considered who had been the children's primary parent as a factor in determining the children's best interests. It was, however, error for the trial court to rely on a custody evaluation to find respondent was a fit parent and that it was in the children's best interests for her to have custody of them, without giving the custody evaluator an opportunity to update his report in light of allegations of physical abuse.

Remanded for further proceedings consistent with this opinion.