**In re the Marriage of Steven C. SCHWAMB, petitioner, Respondent,**

v.

**Catherine F. SCHWAMB, Appellant.**

**No. CO–86–917.**

Court of Appeals of Minnesota.

Nov. 10, 1986.

Roy Donald Hawkinson, Minneapolis, for appellant.

Carole M. Megarry, Bloomington, for respondent.

Considered and decided by RANDALL, P.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge

Catherine Schwamb, claiming that the trial court abused its discretion, appeals from that provision of a dissolution decree which grants custody of two minor children to respondent Steven Schwamb. We affirm.

## FACTS

Appellant and respondent were married on November 16, 1973. Their marriage was dissolved by a decree filed on March 25, 1986. The parties are. the parents of two minor children, a son who was eleven years old at the time of trial, and a daughter who was ten.

As a result of a hearing in October, 1984, respondent was granted temporary custody of both children. The children have lived with respondent in the parties' homestead since that time. Pursuant to the permanent custody hearing on January 20, 1986, the parties were granted joint legal custody, with physical custody in respondent, subject to appellant's reasonable visitation.

The testimony at the custody hearing showed that both parties had suffered numerous health problems. Respondent had open heart surgery and surgery for an embolism in 1984. In September 1985, respondent had surgery for a herniated disc that required convalescence at home until November, 1985. In the summer of 1985, respondent had voluntarily undergone evaluation for alcohol abuse and had been told that he may have a borderline problem.

Appellant's medical history included chemical abuse and anxiety disorders for which she had received prolonged psychiatric care. She had been admitted to detoxification centers twice, had undergone inpatient and outpatient treatment for chemical abuse and had been hospitalized for suspected drug abuse when found unconscious in her bathtub. At the time of trial, appellant was on medication for anxiety. She testified that she had quit drinking in early 1985 when she turned to religion for help. At the time of the hearing, the only aftercare she was receiving for her chemical dependency was her weekly church attendance.

Two court services workers, Diane Finney and Cami Dirnberger, who had prepared the custody evaluation, also testified. Finney and Dirnberger interviewed the children the afternoon before the hearing. Finney indicated that appellant had brought the children to the interview and had remained in the room with the children. During the interview both children told Finney they wanted to live with their mother. However, at another point in the interview, the son said he would like to live with respondent because he enjoyed the sports he can participate in with respondent.

Finney said she could not tell how much truth there was to what the children said because they had been coached by appellant. Finney based her assessment that the children had been coached on the children's use of terminology which was abnormal for their age group. Also, Finney stated that when she took the children on a tour of the courthouse and then returned to the interview room, appellant "immediately questioned the children and immediately asked the children if they had remembered to tell us this and had remembered to tell us that * * *." Dirnberger agreed with

Finney's assessment of the children's credibility. Neither evaluator expressed an opinion of what custody placement would be in the children's best interests.

Elaine Reid, a social worker for the Judson Family Center, was retained by appellant to provide an assessment. Reid interviewed appellant and the children. She testified that it would be in the children's best interests to be placed with appellant and that the children had expressed this preference to her on more than one occasion.

The trial court found:

> The [appellant] acknowledges having questioned the children at least twice as to their desires. She also brought the children to a social worker of her choice who, in her presence, questioned the children as to their desires as to their custodial parent. Both Court Services workers found that the children had been greatly "coached" by the mother as to their comments and that, despite this coaching, [the son] expressed a desire to live with his father. The Court therefore finds it very difficult to determine the true wishes of the children owing primarily to the [appellant's] manipulation of the children.

The trial court did not interview the children and explained in the memorandum accompanying its findings and conclusions that:

> The Court has determined that it is not in the best interests of the children that they be interviewed. The Court is concerned that previous interviews attempted by Court Services, an arm of this Court, have been unsuccessful because of the apparent coaching of the minor children by the [appellant]. The Court does not believe that any worthwhile purpose would be accomplished by personally interviewing these children, and to subject them to the court process could very well be detrimental to their general wellbeing.

The trial court determined that it would be in the children's best interests to remain in the custody of respondent. In reaching this conclusion, the trial court did not find that either appellant or respondent was the primary parent but noted:

> The children have been in the primary care of [respondent] since October 15, 1984. During this time they have continued to do well in school and be involved in normal childhood activities. Prior to that time the family home was unstable due to [appellant's] condition.

Other factors the trial court indicated influenced its decision were appellant's health and emotional stability and respondent's better perspective as to the needs of the children, especially their need to have the companionship of both parents. Appellant had testified that she would seek to severely limit respondent's visitation.

## ISSUE

Did the trial court abuse its discretion when it granted respondent physical custody of the parties' children?

## ANALYSIS

This court's review of a trial court's custody determination is limited to ascertaining "whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985).

In determining the best interests of the children in this case, the trial court made findings based on the factors articulated in Minn.Stat. § 518.17, subd. 1 (1984). Those factors are:

(a) The wishes of the child's parent or parents as to his custody;

(b) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to his home, school, and community;

(e) The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity;

(f) The permanence, as a family unit, of the existing or proposed custodial home;

(g) The mental and physical health of all individuals involved;

(h) The capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in his culture and religion or creed, if any; and

(i) The child's cultural background.

■ In *Pikula*, 374 N.W.2d 705, the supreme court noted that the importance of the relationship between the primary parent and the child is recognized in several subsections of this section. However:

When the facts demonstrate that responsibility for and performance of child care was shared by both parents in an entirely equal way, then no preference arises and the court must limit its inquiry to other indicia of parental fitness.

374 N.W.2d 713-14. *See also Regenscheid v. Regenscheid,* 395 N.W.2d 375 (Minn.Ct. App.1986). The trial court in this case did not specifically find that either parent was the primary parent. While pursuant to *Pikula* such a finding is necessary unless both parents provide child care "in an entirely equal way," 374 N.W.2d at 713-14, the facts here show that both parties had served as caretakers depending on their health and employment. Under these circumstances, and, further, in consideration of the ages of these children, we find no error in the trial court's failure to designate a primary parent.

■ Appellant argues that the trial court abused its discretion in its findings under subsections (b), (g) and (h). The trial court's findings on appeal must be sustained unless they are clearly erroneous. Minn.R.Civ.P. 52.01; *Pikula,* 374 N.W.2d at 710. "It is the explicit duty of the trial court to make assessments of credibility, and this court will not second-guess that judgment unless it is clear it had no reasonable basis." *Benson v. Webb,* 356 N.W.2d 352, 356 (Minn.Ct.App.1984).

Appellant contends that the trial court's finding on the children's preference was erroneous because the children expressed a preference to live with appellant. Under Minn.Stat. § 518.17, subd. 1(b) the trial court may consider a child's "reasonable preference." In the present case the trial court found that the preferences expressed by the children had been encouraged and prompted by appellant, and therefore it did not defer to their expressed preference. In addition, the son at one point expressed a preference to live with his father. There is evidence in the record to support a finding that the children had been coached and that their expressed preferences were not reliable.

Appellant also claims that this finding was erroneous because the trial court failed to interview the children. The decision whether to interview a child to establish the child's preference is committed to the trial court's discretion. *Madgett v. Madgett,* 360 N.W.2d 411, 413 (Minn.Ct. App.1985). In cases such as the present one where the children have been coached and already subjected to the persuasions of one or both parents, it is within the trial court's discretion to refuse such an interview.

Appellant also argues that the trial court was clearly erroneous in its findings about respondent's alcohol use. The trial court found in part that:

[Respondent] underwent a chemical dependency evaluation of his own volition in the summer of 1985, which evaluation resulted in an opinion that he was in the "early stages" of a problem with alcohol, with few consequences of his alcohol use apparent. * * * Witnesses testified to having seen [respondent] several times a week over the course of several years, at varying hours of day and evening, and on varying days of the week, and have never noted a smell of alcohol about the [respondent].

There was testimony on the record to support this finding. Even though appellant presented witnesses that offered contrary

testimony, we must defer to the trial court's assessment of the witnesses' credibility.

Finally, appellant claims the trial court was clearly erroneous when it found:

> Both parties have and give love and affection to their children. The [respondent] has most consistently over recent years given the same sort of love, affection and guidance to the children. [Appellant's] ability to give love, affection and guidance appears to have been affected by her chemical dependency, her anger over the circumstances of this divorce, and her spiritual "awakening" and study.
>
> There was credible testimony that [appellant] was rather inactive in the year or so prior to these parties' separation, and, in particular, that the [daughter] was upset by her mother sleeping a great deal. Since the parties' separation and [appellant's] sobriety, she has become much more involved with the children. This Court is impressed, however, that much of her recent involvement with the children seems to have had as its focus involving the children in building [appellant's] case against the [respondent] in these proceedings and, generally, in convincing the children that their father is not worthy of respect. [Appellant] further appears to have fostered the belief in the children that their father's "life style" is sinful and will result in their father's damnation.

The trial court also questioned the appellant's ability to offer guidance to the children in light of instances when she advised her daughter to remove money from her father's drawer without his consent, telling the children to lie about why they were late getting home, accusing her daughter of being a liar and outbursts directed at the respondent in the presence of the children.

We find ample evidence to support these findings not only in respondent's testimony but also in appellant's own testimony as well as other witnesses' testimony. In light of the deference we must accord the trial court's opportunity to assess the credi-

bility of witnesses, this finding is not clearly erroneous.

## DECISION

The trial court's findings under the factors outlined in Minn.Stat. § 518.17, subd. 1 were not clearly erroneous, and the trial court did not abuse its discretion in awarding custody of the parties' children to respondent.

Affirmed.