Herman P. Imdieke, Jr., pro se.

Harry E. Burns II, St. Cloud, for appellant.

John J. Meurs, Rinke, Noonan, Grote & Smoley, Ltd., St. Cloud, Guardian Ad Litem.

Considered and decided by PARKER, P.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

**In re the Marriage of Herman P. IMDIEKE, Jr., petitioner, Respondent,**

v.

**Kathryn M. IMDIEKE, Appellant.**

**No. C6–87–253.**

Court of Appeals of Minnesota.

Sept. 1, 1987.

### OPINION

WOZNIAK, Judge.

Kathryn Imdieke appeals a split custody decision awarding physical custody of her eldest child, David, to her former husband, Herman Imdieke. We reverse and remand.

### FACTS

Herman Imdieke (Dick) and Kathryn Imdieke (Kay) were married for 16 years and had four children. In their dissolution, the parties stipulated to property division and only contested the custody of the eldest child.

The court appointed attorney John Meurs as Guardian Ad Litem for the children and ordered a custody study to be done by Robert Franseen, Custody Resolution Spe-

cialist. Dick agreed to and participated in the study.

Dick petitioned for joint legal custody of the four minor children with Kay to have primary physical custody. In her counter-petition, Kay moved for sole legal and physical custody of the children. Prior to trial, Dick conceded custody of the three youngest children to Kay and sought legal and physical custody of 12–year-old David.

After interviewing all the parties, Franseen decided the children should be kept together and that it was in the children's best interests to remain with their mother Kay. The study was introduced at trial and Franseen testified in support of his recommendations.

At trial Dick presented his counselor, Dr. Mitnick, whom he and the children had seen during a time when Dick had exclusive custody. Dr. Mitnick did not interview all the parties, had never met Kay, had never seen the children interact with her, and did not do a custody study. Overruling objections as to foundation, the trial court allowed her opinion and she recommended the oldest child, David, remain with his father.

The judge, in his chambers, interviewed David, who told him he preferred to live with his father rather than to remain with his mother and siblings. After determining he was of sufficient age and capacity to express a reasonable preference, the court awarded custody of David to his father. Kathryn Imdieke appeals. On June 4, 1987, Dick Imdieke, who had been acting pro se, moved for an extension of time to obtain counsel. Pursuant to our order of June 8, 1987, we denied the motion and the case was submitted for consideration on appellant's brief and the record with oral argument waived.

## ISSUE

Did the trial court err in splitting custody of the children?

## ANALYSIS

Split custody decisions are frowned on in Minnesota. "While split custody decisions may be made within the discretion of the trial court, they are viewed as 'unfortunate' and are carefully scrutinized." *Rinker v. Rinker*, 358 N.W.2d 165, 168 (Minn. Ct.App.1984) (quoting *Schultz v. Schultz*, 266 Minn. 205, 208, 123 N.W.2d 118, 121 (1963)).

▪ The preference of a minor child is one of the factors to be considered in custody cases, but it is not necessarily determinative of the final placement. *See Uhl v. Uhl*, 395 N.W.2d 106, 110 (Minn.Ct.App. 1986); *Schultz v. Schultz*, 383 N.W.2d 379, 382 (Minn.Ct.App.1986). It is but one factor to consider in custody disputes. *Madgett v. Madgett*, 360 N.W.2d 411, 413 (Minn.Ct.App.1985).

▪ Minnesota Statutes Section 518.17 (1986) sets forth relevant factors to be considered and evaluated by the court in determining custody. Because the court determined David to be of sufficient age and capacity to express an opinion, the statutory factors, and not the *Pikula* primary caregiver analysis, were used. *Uhl* at 109 (consideration of which parent has been the primary parent is not determinative where a child is able to express a preference). Even under *Pikula*, the guiding principle in all custody cases is the best interests of the child; and under the Minnesota Supreme Court's prior interpretations of Minn.Stat. § 518.17, subd. 1,

> when the evidence indicates that both parents would be suitable custodians, the intimacy of the relationship between the primary parent and the child should not be disrupted "without strong reasons which relate specifically to the [primary] parent's capacity to provide and care for the child."

*Pikula v. Pikula*, 374 N.W.2d 705, 711 (Minn.1985) (quoting *Berndt v. Berndt*, 292 N.W.2d 1, 2 (Minn.1980)). The court did not question Kay's "capacity to provide and care for the child," but emphasized David's preference to live with his father over all the other factors in determining "the best interests of the child."

The statute defines "the best interests of the child" as including the wishes of the parents as to custody; the reasonable pref-

erence of the child; the interaction and interrelationship of the child with a parent or parents and siblings; the child's adjustment to home, school, and community; the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity; the permanence, as a family unit, of the existing or proposed custodial home; the mental and physical health of all the individuals involved; and the capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in the child's culture, religion and creed. Minn.Stat. § 518.-17, subd. 1.

The statute further states that when determining custody, the court shall consider the best interests of the child and shall not prefer one parent over the other solely on the basis of the sex of the parent. Minn. Stat. § 518.17, subd. 3.

Both parents testified they wanted custody of David. He initially did not state a preference, but later chose to live with his father. The children had a close relationship with each other and their mother, but the record indicates that the split custody decision has been detrimental to David's relationship with his mother and siblings. David is generally well-adjusted.

The original family structure changed when Dick left the family two years prior to the dissolution. David continued to live with his mother until one month prior to the hearing when his father inexplicably had exclusive custodial visitation of all four children for the month of July and Kay was allowed only telephone contact.

The physical health of the parties is not in question, but much has been made of their mental health, particularly their attitudes towards each other and other members of the opposite sex. The custody study shows Kay to have the capacity and disposition to be a good parent to all four children, boys and girls, to show them positive affection, and give them love and guidance. The same study states Dick can show his sons affection, but not his daughters. Both parties will raise the children with the same cultural background.

The custody study suggests the children remain together with their mother. The record indicates that David's stated preference to live with his father is the only factor in the statute met by Dick. Minn. Stat. § 518.17, subd. 1(b).

Further, Franseen, the court-appointed evaluator, doubted David's stated preference to live with his father because he had been with David on "at least four or five occasions and on each occasion David had declined to make a choice." Franseen testified he believed David was under a great deal of pressure from his parents to make a choice between them that he did not want to make, and that "frequently children will take care of an adult" and "in this particular case, David is, in fact, taking care of his Dad."

John Meurs, the guardian ad litem, testified that he had asked David his preference and the response seemed "canned" or rehearsed to him "as if David had been talking to someone about what he should say to me." Meurs also believed David was "sticking up for his dad." Meurs stressed that David was still interacting well with his mother and his father, had never expressed a preference to Franseen, and that even though David had expressed a preference to Meurs, he did not feel it was sincere. Meurs said he was not convinced that David was really sure where he wanted to live.

During the hearing, David stated that his father "gave him help with ideas about his reasons for wanting to live with" his father instead of his mother and siblings. This court has upheld a custody decision contrary to the children's stated preference where "[t]here is evidence in the record to support a finding that the children had been coached and their expressed preferences were not reliable." *Schwamb v. Schwamb*, 395 N.W.2d 732, 735 (Minn.Ct. App.1986).

In the custody study, Kay is listed as the parent who provided stability, nurturing, and was the primary care giver, even when the parties still lived together.

Franseen discussed the importance of the family unit and not breaking up the children. In the custody study, he noted: "It is desirable to maintain the continuity and the permanence of the children remaining with their mother as a family unit." When the study was done, the four children had a close relationship. We believe the children should have a chance to maintain that relationship and not break up the family.

Besides the desirability of preserving the children as a family unit, Franseen expressed some concern about Dick as a custodial parent:

he continually and repeatedly blames everyone else for his problems and his relationships with his children, and not once in my interviews did he even hint at the slightest willingness to take any responsibility for his own actions, and I am concerned about his attitude about females. I think he needs therapy to deal with it or he will never have a healthy, good relationship with all of his children, not simply the girls, but with his sons as well.

Franseen also expressed concern about David being put in the middle of his parents' dispute and taking care of his father instead of his father taking care of him.

Dr. Mitnick, a licensed psychologist, had examined the children during the month of July, just prior to trial. This was the period during which Dick had been granted a one-month exclusive custodial visit with his children, and their mother was only allowed to telephone them. The trial court allowed the psychologist to answer the question "whether or not Mrs. Imdieke was providing a healthy emotional environment for David" despite the fact that the psychologist had testified that she had never met Mrs. Imdieke, had never personally evaluated her, and had not in fact even specifically done a custody study. She had not seen the children in either of the custodial settings, had not talked to anyone at the children's school, and had never seen the children interact with their mother.

Because David is a boy, Mitnick recommended that David be with his father so he would have a male role model. To grant custody of David to Dick Imdieke just because he is male is a violation of Minn.Stat. § 518.17, subd. 3. (The court shall consider the best interests of the child and shall not prefer one parent over the other solely on the basis of the sex of the parent.) The court gave no explanation why a male role model could not be provided by liberal visitation with his father. Mitnick did, however, state that without counseling the rift in the family would be exacerbated by split custody.

■ The trial court noted in its findings of fact that Kay's living arrangements were uncertain. Affidavits and exhibits in the record indicate Kay was forced to move because the homestead had been sold to reduce Dick's debt on the farm and the temporary housing Dick arranged for Kay and the children was declared substandard by the health department. Having been unable to find employment in Melrose, Kay moved in with her mother in Anoka while looking for work. Dick still has his business and therefore a reason to remain in Melrose. To base custody or care on a parent's remaining in a certain area is a restrictive condition contrary to Minnesota law. *See Auge v. Auge*, 334 N.W.2d 393 (Minn.1983). Kay's plans are nebulous because she is still trying to find employment with income sufficient to support the children, which will in turn determine where she can afford to live. She should not be penalized because the homestead was sold to reduce Dick's debts.

The trial court instructed that neither party "do any act which would estrange the children from the other parent." The parties have not complied. At the time of the hearing, David said he liked his mother. Now he is estranged from all his family except his younger brother.

The trial court also ordered both parents to get counseling for themselves and to cooperate in procuring counseling for all the children. Even after the court suggested an arrangement to find a neutral third party counselor, no family counseling program has been structured to try and heal the rift between the siblings and between the children and their respective non-

custodial parents. It is crucial that this be done while there is still a salvageable relationship.

The findings of the trial court are unsupported by the evidence and the law was improperly applied.

### DECISION

The trial court's custody decision is reversed and we remand with instructions that the trial court amend its custody order to award David's physical and legal custody to his mother and set up a visitation schedule which gives liberal visitation to his father. There should also be a visitation and counseling schedule created that will foster the relationships of all the children with each other and with their father.

Reversed and remanded.