**In re the MARRIAGE OF Larry D. UHL, petitioner, Appellant,**

v.

**Hyon Suk UHL, Respondent.**

**No. CX–87–787.**

Court of Appeals of Minnesota.

Oct. 6, 1987.

Bruce Duncan, St. Paul, for appellant.

Barry A. Sullivan, Stockman, Sullivan & Sadowski, Coon Rapids, for respondent.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

This matter is before us on appeal from remand following our decision in *Uhl v. Uhl,* 395 N.W.2d 106 (Minn.Ct.App.1986). In that case, Larry Uhl appealed the trial court's grant of custody to Hyon Uhl. Appellant Uhl claimed the court services investigator and other professionals paid insufficient attention to two allegations of respondent Hyon Uhl's alleged abuse of the parties' daughter.

On appeal, this court determined that the custody evaluator was not sufficiently familiar with the two incidents, both of which were substantiated by child protection services. The evaluator knew of the two incidents, but, in reliance on child protection's recommendation that the incidents were not substantive, did not pursue their investigation. This court remanded, instructing the district court "to permit [an] updated [custody] report" and to conduct "a review hearing." On remand, the trial court ordered court services to update the custody evaluation, and to update any abuse allegations.

Following the review hearing, the district court ordered visitation mediation and, on respondent's motion, structured visitation. The district court reaffirmed the judgment and decree in all respects. Larry Uhl appeals, claiming the court erred by awarding custody to respondent and by modifying visitation. We affirm.

## FACTS

The parties were married in Seoul, South Korea, January 26, 1973. At the time, appellant was an American soldier stationed in Korea. Respondent, a Korean National, became a U.S. citizen when the parties later moved to the United States. Appellant is presently 35; respondent is presently 41 years of age. The Uhls have two children, Caroline and Lawrence.

The parties separated in May 1985, and were divorced in January 1986. The divorce was particularly acrimonious. At trial, the court examined the extent of two substantiated incidences of abuse of Caroline by respondent. It is these two reported incidences, as well as any additional abuse allegations occurring after the dissolution hearing, this court was interested in developing on remand.

The family situation in this matter, according to the trial court's memorandum, incorporated into the original judgment and decree, was particularly difficult:

> The evidence is full of the usual denials and self justification by both parents. In the times prior to the actual physical separation there was a tremendous amount of yelling, name calling and other immature behavior on the part of both parents. The custody evaluator feels, and the Court agrees, that the primary cause of this behavior is the father. Unfortunately the conduct has continued after the separation with extreme behavior of this sort occurring when the children are being picked up and returned home from visitation. This evidence is important because this confrontive behavior has put the mother under tremendous stress. All persons, including the experts, agreed that the mother can explode, act out, and be very impulsive when under stress. The father seems to be bent on doing anything in his power to hurt his soon to be ex-wife. This is obvious from the content of the interviews given to the custody evaluator. The father's vexatious attitude is further apparent from his in Court testimony. The basis for his acrimonious attitude is the past activities of his wife prior to their marriage in Korea. The Court finds it difficult to understand how the father can be so critical of these activities when he married the [mother] with full knowledge of her past. Having outlined the backdrop of the child abuse allegations, those allegations must now be closely scrutinized as they relate to the mother's fitness as a parent.

This Court believes that there has been some abuse in the period prior to the physical separation, but that the extent of the abuse is uncertain. There is a claim that the mother hit the children and used a wooden spoon for assaults on the children. There have been two investigations by child protection which have verified some form of abuse.

After the first reported incident, respondent entered counseling. The second reported incident occurred while she was in counseling. She continued counseling after the second incident. The trial court concluded, "the work product of the [custody] evaluator convinces this Court that this issue is exaggerated and what problems do exist are under control." The trial court found that in his report, prepared for trial, the evaluator focused on the parents' efforts to provide a parenting plan:

> The evaluator found that without any prompting the mother provided various models of parenting ideas which she was carrying out and intended to implement in the future. The father's answers to questions that would stimulate this kind of response consisted of entirely negative criticisms of his wife. His testimony in Court confirms this in that he presented no real parenting plan and presented a tremendous amount of negative material about his wife. * * * The mother is the only one who provided structure, stability, and any kind of plan.

### Abuse Allegations

Three incidents composed appellant's abuse allegations at the dissolution trial. Two incidents were verified by child protection. One incident occurred in June 1985, and the second in October 1985. In the June 1985 incident, respondent hit Caroline with a spoon. In the October 1985 incident, respondent hit Caroline in the mouth with her hand, and cut Caroline's mouth. Respondent believed her ring may have cut Caroline's mouth. A third incident occurred after the separation, at a time the children were misbehaving. Respondent, under extreme stress, according to court services reports, sent the children to stay with their father.

The trial court found some abuse had occurred, but found the extent uncertain, a finding which gave rise to the remand by this court. The court noted there were no further allegations of abuse after the parties separated. It also noted respondent's problems were being addressed in counseling.

*On Remand*

This court did not specifically request additional findings. It ordered an updated custody study with emphasis on the abuse allegations. Appellant is primarily concerned with the two 1985 incidents. He also claims respondent did not take the children in for follow up medical examinations after the separation. He did not pursue the medical examination claims.

According to the updated report, respondent was under a lot of stress when she hit Caroline. The evaluator's updated custody report states:

On December 20, 1986, and January 4, 1987, I spoke with Jory Rasmussen, the child protection worker who has had contact with the Uhl family. He states their records reflect two substantiated instances of physical abuse by Mrs. Uhl. He sees neither of them as being particularly serious. He states on 6/12/85 Mrs. Uhl admitted she spanked Caroline with a wooden spoon approximately once a week. He recommended she get counseling which she subsequently did. On 10/15/85 Mrs. Uhl struck Caroline with the back of her hand resulting in a swollen lip. He says there have been no further substantiated instances of abuse.

Rasmussen saw respondent's act of sending the children to stay with their father as a practical coping gesture. Moreover, the evaluator reported Rasmussen stated:

Mrs. Uhl does sometimes lose patience with the children, but that is usually because the children are escalating due to things Mr. Uhl has told them * * *. Mr. Rasmussen states it is his opinion that Mr. Uhl does not wish to parent the children but wants to gain control of them in order to spite Mrs. Uhl. He states Mr. Uhl manipulates the children in order to get at Mrs. Uhl. He states he

believes Mrs. Uhl is more emotionally stable than Mr. Uhl and that Mr. Uhl's desire to hurt Mrs. Uhl is being very emotionally destructive to the children.

The custody evaluator visited the children in each of the Uhls' homes. When visiting the children in respondent's home, the evaluator noted that the children played with their toys and interacted well with their mother and with each other. The evaluator noted that respondent was physically affectionate with the children. In the evaluator's summary and recommendations, she stated she does not believe respondent is an abusive parent, although, when under stress, she tends to lash out verbally at the children.

During the visit at appellant's home, the evaluator noted the children were quiet and withdrawn. The first thing appellant said to the evaluator was, "Did you ask these children about their preference? The Appeals Court said you had to." The evaluator observed that the children answered fearfully and said they did not remember. When the evaluator refused to discuss the children's preferences, appellant continued to "just sit there. In over half an hour, he never addressed a word to the children or made eye contact with them."

The evaluator noted in her report, relative to the abuse reports, that respondent has participated in counseling, that the therapists believe she has stopped using physical punishment on the children, and that the children do not present as abused children. The therapist stated that respondent was having difficulty dealing with cultural transitions from her native country to the United States. The therapist referred respondent to Hyon Sook Han, a senior social worker at Children's Home Society. Mrs. Han stated that respondent's child rearing methods reflect Korean values and norms.

On remand, the trial court, after reading the reports, reaffirmed its decision to give respondent custody, and ordered scheduled visitation. The original decree provided for liberal visitation. Under the original decree, appellant visited with the children every weekend and one night a week. Ac-

cording to the custody evaluator, confrontations initiated by appellant occurred at each visit when appellant dropped off and picked up the children. In response to this situation, the court structured visitation to occur every other weekend and one night a week. The court also provided that appellant must stay in the car when he drops off and picks up the children.

### ISSUES

1. Did the trial court err by finding respondent was fit and proper to have custody?

2. Did the court err by modifying the visitation schedule?

### ANALYSIS

### I.

*Custody*

After viewing the updated custody study, the trial court reaffirmed the original decree in its entirety. In the original decree, the trial court found respondent was the primary caretaker, and found that because appellant works nights and weekends, it was impossible for him to be the primary caretaker.

Appellate review of custody determinations is governed by the abuse of discretion standard. *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985). The factors to be considered are outlined in Minn.Stat. § 518.17, subd. 1 (1986) and in *Pikula:*

> [W]e hold the factors set forth in section 518.17, subd. 1, require that when both parents seek custody of a child too young to express a preference for a particular parent and one parent has been the primary caretaker, custody be awarded to the primary parent absent a showing that the parent is unfit to be the custodian.

*Pikula,* 374 N.W.2d at 713.

Here, the trial court found respondent was the primary caretaker. Appellant argues, based on the abuse reports, that respondent is unfit. Appellant lists several concerns: one of the episodes of abuse occurred after respondent underwent ther-

apy; respondent suffers from low self esteem; she was no longer in therapy; substantiated acts of abuse reflect her Korean values that physical punishment is an appropriate form of discipline; and she has not demonstrated the ability to "adequately parent at all times."

The updated evaluation reflects that respondent continued therapy after the second abuse allegation. While Joe Wotruba, respondent's psychologist, stated that respondent suffered from a depressive disorder, he went on to state, "she is doing fairly well now. * * * [she] is dealing with cultural issues in her transition to the United States and emotional issues from her childhood."

The evaluator interviewed a number of people, including Caroline's teacher, and concluded:

> I do not believe Mrs. Uhl is an abusive parent. Caroline has stated to me and to Jory Rasmussen that she is not afraid of her mother and she also stated to me that her mother has not spanked her since the separation. Mrs. Uhl is conscientious in seeking counseling and her counselor stated she has changed her pattern of physical punishment towards the children.

■ We find persuasive the report of the child protection investigator who investigated the two 1985 reported incidents of abuse and concluded they were not serious.

Appellant cites *Jones v. Jones,* 377 N.W.2d 38 (Minn.Ct.App.1985), for the proposition that the primary caretaker doctrine is insufficient to determine custody if the primary parent cannot adequately parent at all times. In *Jones* the mother, the primary parent, suffered from a major mental illness, and was repeatedly hospitalized for the illness. The hospitalizations were triggered by her repeated failure to take her medication. This court stated Mrs. Jones could not adequately parent at all times, relying on evidence that she went off her medication and had recurrences of her illness at least once a year. We concluded, based on a review of the trial court's findings, that the trial court was clearly erroneous there in finding the best

interests of the children were served by placing custody with the mother, and we found that the primary parent doctrine did not apply on those particular facts. We did not replace these concepts with a new test of "being an adequate parent at all times."

The *Jones* case is not applicable here. There is no evidence that respondent suffers from a major mental illness. The custody evaluation concluded only that she is depressed and suffering from stress, some of which is due to the acts of appellant.

We hold the trial court properly awarded custody of the children to respondent. The original complaints which warranted remand by this court were addressed and were not egregious to begin with. The kind of abuse reported to child protection in 1985 appears to be non-repetitive. Mitigating the reported abuse are the facts that respondent was under great stress, partially caused by appellant, and by the differences between Korean child rearing practices and those in the United States. Respondent is open and amenable to therapy, was and is willing to undertake additional therapy, and is flexible and willing to change some of her habits.

## II.

*Visitation*

Appellant argues that the court erred by modifying visitation. Respondent argues that, because the court originally ordered "liberal" visitation and did not schedule visitation, the court did not really modify visitation.

The court scheduled visitation because appellant was causing problems when he picked up and dropped off the children. The transcript reflects that while the children were with appellant, he vilified respondent, which caused problems with the children.

The abuse of discretion standard applies to visitation. *Manthei v. Manthei*, 268 N.W.2d 45 (Minn.1978). As respondent notes, the visitation scheduled by the court is only temporary, pending the outcome of visitation mediation. We affirm the trial court on both issues.

## DECISION

The district court's award of custody to respondent and the court's scheduling of visitation was not an abuse of discretion.

Affirmed.